514 A.2d 137

Edwin MOORE, D/B/A Marabella's, Steve's and John's, Inc. D/B/A Continental Burgers and Picadeli Circus, Inc., Individually and On Behalf Of a Class of Plaintiffs Similarly Situated, Appellants,

v.

PAVEX, INC., Herre Bros., Inc. and Consolidated Rail Corporation.

COUNTY OF DAUPHIN; William Nichols and George Nichols T/A the Colonnade Restaurant; Samuel Graci T/A Construction Collaborative; Robert Saligman T/A Cynwyd Investment; Ammoun C. Schneider and Daniel J. Richards a Partnership, T/A The Bread Basket, Appellants,

v.

PAVEX, INC., Herre Bros., Inc. and Consolidated Rail Corporation.

Superior Court of Pennsylvania.

Argued May 20, 1986.

Filed Aug. 11, 1986.

Laurence S. Berman, Philadelphia, for appellants.

Kenneth I. Levin, Philadelphia, for Consolidated Rail, appellee.

Before CIRILLO, President Judge, and TAMILIA and HESTER, JJ.

TAMILIA, Judge:

This is an appeal from an Order entered by the Dauphin County Court of Common Pleas sustaining defendant/appellees' preliminary objections to plaintiff/appellants' consolidated amended class action complaint, thereby dismissing appellants' action.

Appellants' complaint is based on the September 11, 1984 rupture of a 42-inch water line, serving the City of Harrisburg and the Borough of Penbrook, by construction workers using a jackhammer. Appellants seek damages because of losses they sustained as a result of the interruption of water service. Appellants are Dauphin County and individuals and corporations doing business in the City of Harrisburg. Appellees, Pavex, Inc. and Herre Bros., Inc. are contractors that were engaged in excavation, drilling etc., and appellee Conrail is the owner of the land where the complained of activities occurred. Appellants alleged they suffered a variety of harms from appellees' negligence ranging from "individual and familial suffering" and "loss of wages" to "sums expended for bottled water or other replacement water" and "operating losses". (Appellants' Consolidated Amended Class Action Complaint, pp. 12, 13)

The lower court sustained appellees' preliminary objections on the basis that appellants failed to state a cause of action upon which relief could be granted.

Appellants allege on appeal that under the circumstances of this case, they are entitled to recover their respective economic losses in tort because allegations of tortious activities which produce economic loss and a serious risk of a health and safety hazard state a cause of action for recovery of economic harm in tort. Appellants further contend that the "bright line rule" stated in *Robins Dry Dock and*

*Repair Co. v. Flint,* 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927) is inapplicable where tortious conduct of defendants causes economic harm and a serious risk of a health and safety hazard, and also where the economic harms were foreseeable, not insured and not protected against by contractual provision.

Appellant relied heavily on *Industrial Uniform Rental Co., Inc. v. International Harvester Co.,* 317 Pa.Super. 65, 463 A.2d 1085 (1983) on the theory that a party should be able to recover in tort, if unable to do so in assumpsit, when he alleges conditions "potentially dangerous to persons or property," (appellants' brief at 13) even when physical injury has not yet occurred. Lastly, appellants aver the law of private nuisance supports their recovery for economic harm.

There does not appear to be any Pennsylvania authority which clearly addresses these contentions. Nevertheless, the lower court held there could be no recovery for economic loss by the plaintiffs in this case who did not suffer *physical harm* to property in which they had a proprietary interest.

Appellants and appellees have also filed supplemental briefs in order to discuss the applicability of these recent decisions; *Aikens v. Baltimore and Ohio Railroad Co.,* 348 Pa.Super. 17, 501 A.2d 277 (1985); *Johnson v. General Motors Corp.,* 349 Pa.Super. 147, 502 A.2d 1317 (1986), *No. 111 Eastern Dist. Allocatur Docket to the instant appeal.*

In their supplemental brief, appellants maintain there is a significant difference between *Aikens* and the present case. In *Aikens,* a freight train derailed, damaging a manufacturer's plant. The manufacturer curtailed production, and accordingly, its hourly workers lost wages they otherwise would have earned. The employees then sued the railroad to recover their lost wages. The court denied recovery stating that no cause of action exists for negligence which results in economic loss. *Aikens,* 348 Pa. at 20, 501 A.2d at 279. Appellants, herein, argue that in *Aikens* the parties alleging harm were employees of the firm seeking recovery for economic loss and, therefore, not directly affected, but

in the instant action, appellants argue the loss is suffered directly by the parties in the class. In further support of their position, appellants cite *Commonwealth v. General Public Utilities,* 710 F.2d 117, (3d Cir.1983), wherein plaintiffs' alleged actual physical intrusion of a noxious substance upon their properties, namely radioactive material emitted during a nuclear accident. The court stated that:

> Although plaintiffs apparently do not assert that any "bodily injury, sickness, disease or death" was caused, *they clearly claim temporary loss of use of property* and "damage to property" as a result of the intrusion of radioactive materials upon plaintiffs' properties through the ambient air, irrespective of any causally-related permanent physical harm to property. The Complaints are adequate to defeat a motion for summary judgment or a motion to dismiss and to permit such a claim for damages to proceed. [emphasis added, footnote omitted]

710 F.2d at 123.

Clearly, the reasoning and rationale of *Aikens* applies to the case *sub judice* and *General Public Utilities, supra,* is substantially distinguishable from the case before us.

■ The facts in this case are squarely on all fours with *Aikens, supra,* and *Robins, supra,* in that the economic harm was not direct and foreseeable. If any of the class had suffered direct damage to property as a consequence of the rupture of the watermain (such as flooding, destruction of property or personal injury), those unquestionably would be actionable. Such was not the case; "individual and familial suffering", "loss of wages", "replacement or bottled water" and operating losses are no more direct foreseeable damages, economic losses or *serious risks of health and safety* than are lost wages in *Aikens* and in *Robins.*

■ Appellant seeks to extend the common law tort liability by including within the law of product liability to construction work involving the actions of a single employee in operating a jackhammer. The underlying theory of product liability has no application to this relationship. The liability

of a manufacturer, for a product over which it has exclusive control in design and manufacture and which is inherently dangerous if not properly designed and constructed, requires special considerations that are inapplicable to routine construction and manufacturing endeavors. The former is similar to placing a time bomb into circulation where effects can be felt at any time by totally unsuspecting persons, which can only be controlled by assessing strict liability on the agency best able to prevent the danger, the manufacturers.

In general construction, manufacturing, railroading or any of the myriad of other production endeavors in our society, beyond the reasonable care that the employer might exert, there are so many variables as to individuals, work conditions, or collateral involvements, as to make foreseeability impossible. Neither do they permit the exercise of the degree of control or prevention necessary to reduce the possibility that any given action will result in injury to persons or property. To extend liability beyond the first person in privity in the product liability category is reasonable and justifiable in a highly technical society; as to the second category, expectancies of liability cannot flow beyond the persons or property injured, for economic losses only, without creating interminable chains of remote consequences and imponderable issues of liability and damages. Appellants' reliance on *Industrial Uniforms, supra,* is misplaced. The gradual deterioration of a motor vehicle, with debatable issues as to the cause being gradual deterioration through use, to be governed by warranties under the UCC, or design defects under tort and product liability law, can not be rationalized or equated with the destruction of a watermain through an accidental severance from an external agent, a manually operated jackhammer. The theories proposed by the majority (Johnson, J.) and the dissent (Hester, J.) are inapplicable here. Neither is appellant saved by reference to *General Public Utilities, supra.* Chernobyl has for ever put to rest any question that radiation or fallout from a meltdown of a nuclear plant does not

directly cause injury to persons and property with which it comes into contact.

The injury, while not always immediately ascertainable, is direct and predictable, and for persons *not* to move immediately from a fallout zone to avoid possible incredible consequenses, is folly and unsupportable. Any economic loss resulting from such a scenario *is* directly attributable to the meltdown. The meltdown is predictable and hopefully preventable and entirely within the control of superspecialists to whom we have entrusted our environment and our lives. This is no mere rupture of a waterpipe. It is clearly distinguishable.

We, therefore, conclude the lower court was correct in sustaining defendant/appellee's preliminary objection to the consolidated class action complaint, and we do not believe there is merit to appellants' request that we extend the liability to a remote second tier of causation by engrafting either strict liability standards or the law of private nuisance to common law tort liability.

Order affirmed.