542 A.2d 567

**GENERAL PUBLIC UTILITIES, Metropolitan Edison Co., Pennsylvania Electric Co., Babcock and Wilcox, J. Ray McDermott Co., and Catalytic, Inc., Appellants,**

v.

**GLASS KITCHENS OF LANCASTER, INC., Cherry Lane Motor Inn Corp., Continental Inns of America, Inc., t/a Continental Inn, James Cosgrove d/b/a Revere Tavern and Best Western Revere Motor Inn, Noah N. Martin, Co., Pentidatillo Corp., d/b/a Italian Villa East, Richard M. Rutt, d/b/a Rutt's Tours, Earl Realty, Inc., the Amish Homestead, Inc., One Room Schoolhouse, Inc., Homestead Gift Shop, Inc., Two Twenty-Two Corporation, Thomas E. Strauss, Inc., Trifon N. Skiadas, Nandas N. Skiadas, George N. Skiadas, Peter N. Skiadas and Harry Keares, t/a Skiadas Bros. Enterprises, Family Style Restaurant, Inc., and Host Enterprises, Inc., Appellees.**

Superior Court of Pennsylvania.

Argued Jan. 22, 1988.

Filed May 10, 1988.

Alfred H. Wilcox, Philadelphia, for appellants.

Laurence S. Berman, Philadelphia, for appellees.

Before CIRILLO, President Judge, and McEWEN and MONTEMURO, JJ.

PER CURIAM:

This is an appeal by permission from a certified interlocutory order denying appellants' motion for summary judgment.

The instant case was originally filed by appellees in the United States District Court for the Middle District of Pennsylvania but was transferred to the Court of Common Pleas of Lancaster County following the decision of the Third Circuit Court of Appeals in *Stibitz v. General Public Utilities Corp.*, 746 F.2d 993 (3d Cir.1984), *cert. den.* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). In *Stibitz,*

the Third Circuit raised the issue of subject matter jurisdiction *sua sponte* and held that "plaintiffs' state law claims do not arise under the Price–Anderson Act" and their "federal law claims are 'wholly insubstantial' and provide no basis for federal jurisdiction." *Id.* at 996–997.

Appellees are corporations associated with the Pennsylvania Dutch tourist industry. Appellees' cause of action concerns the "nuclear incident" which occurred in March of 1979 at the Three Mile Island nuclear facility (hereinafter "TMI") located in Dauphin County, Pennsylvania.[1] Appellees' tourist businesses are located in Lancaster County and are more than twenty-five (25) miles from TMI. Appellees allege that the TMI nuclear incident caused a diminution in the number of tourists who visited Lancaster County. As a result, appellees' seek damages for economic loss. Appellees contend that the TMI nuclear incident was caused by the following actions of appellants:

(a) negligent, reckless, willful or wanton misconduct in the design, manufacture, construction, installation, operation, and maintenance of TMI and its reactors, machinery, equipment and facilities;

(b) negligent, reckless, willful or wanton misconduct in responding to and handling such accident, nuclear incident, and related series of events;

(c) defective manufacture, construction, design, and installation of the nuclear reactor, machinery, equipment and facilities at TMI;

(d) miscarriage of an ultrahazardous activity to wit, the operation of a nuclear facility;

(e) creation of an actionable nuisance; and

(f) violation of the terms and conditions of the license issued by the Nuclear Regulatory Commission for TMI, which license was intended to protect and benefit

---

1. Appellees defined "nuclear incident" in their pleadings as "an occurrence within the United States causing, *inter alia,* loss of or damage to property, or lost use of property, arising or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or by-product material." *See* 42 U.S.C. § 2014(q).

individuals and businesses within the vicinity of such facility, including Plaintiffs.

R.R. at 25a.

On November 15, 1985, appellants filed a motion for summary judgment. Appellants based this motion on the contention that there was no genuine issue of fact as to whether any of the appellees suffered actual physical injury or actual property damage. Appellants filed three affidavits with this summary judgment motion. Mr. Sydney W. Porter Jr.'s [2] affidavit describes the data collected following the TMI nuclear incident and includes Mr. Porter's opinion that "there was no contamination of the area of Lancaster County in which the (appellees') businesses ... are located caused by the Three Mile Island accident." R.R. at 95a. Mr. Keith Woodward's [3] affidavit contains his opinion that "from March 26, 1979 through April 30, 1979, cumulative exposure to noble gases released from TMI, in the area of Lancaster County more than 25 miles from Three Mile Island, was not more than 0.1 millirem per person ... in that same period persons in that area would have received more that fifty times as much exposure from natural background radiation." R.R. at 102a.

Appellees, in answering the motion for summary judgment, contended that genuine issues of material fact existed as to whether appellees suffered property damage or physical injury as a result of the TMI nuclear incident. In support of this contention, appellees filed two affidavits of their co-counsel, Mr. Arnold Levin. In one affidavit, which had been previously filed in federal court, Mr. Levin stated that "[p]laintiff will utilize the resources mentioned in this Affidavit as well as the report of Dr. Gofman ... and the reports of other experts in the related personal injury

2. In Mr. Porter's affidavit, he states that he is "a certified health physicist with over 29 years of experience in the fields of health physics, radiological environmental monitoring, emergency planning, nuclear engineering and radiochemistry." R.R. at 91a.

3. Mr. Keith Woodward states in his affidavit that he is employed as a Senior Consultant by a "consulting/engineering firm specializing in reactor siting, safety, emergency planning, accident analysis and probabilistic risk assessment...." R.R. at 103a.

litigation to prove at a trial of this action the actuality of radiation contamination and the actuality of a significant threat of contamination of plaintiff's property in the period of the accident." R.R. at 183a. The "resources" attached to Mr. Levin's affidavit included a report by Mr. Stephen Ray Chin[4] which espouses the view that the testing of radiation contamination following the TMI nuclear incident may have been unsatisfactory.[5] In Mr. Levin's second affidavit, Mr. Levin states that a Public Health Fund Report, published August 15, 1984, "[u]nquestionably ... confirms radiation doses delivered to the population located within 50 miles from the TMI accident." R.R. at 243a.[6] The record in the instant case contains a third affidavit filed by Mr. Levin on February 19, 1986 which relies on Pa.R. C.P. 1035(e) and includes the following statements:

> At the present time, plaintiffs cannot present facts, other than through this affidavit and my affidavits filed in the federal cases, which are essential to justify their opposition to defendants' motion for summary judgment ... because defendants have not responded to plaintiffs' merits discovery in this matter. In related litigation, however, defendants supplied other plaintiffs with discovery which was utilized by various experts in connection with their preparation of expert reports and was utilized by various public and private authorities in connection with the preparation of reports. Copies of such reports were

4. From the record before us, it appears that Mr. Chin is a statistician, with experience in the area of environmental releases of radioactive materials from nuclear installations. R.R. at 239a–240a.

5. The test results questioned by Mr. Chin are the same test results which Mr. Porter and Mr. Woodward refer to in their affidavits. R.R. at 94a and 113a. For example, Mr. Chin questions the accuracy of the thermoluminescence dosimetry ("TLD") radiation monitoring program. R.R. at 232a–235a.

6. This report, "A Review of Dose Assessments at Three Mile Island and Recommendations for Future Research", is included in the record before us. We note that this report also questions the reliability of the radiation testing which was undertaken following the TMI nuclear incident and also questions the accuracy of the analysis of the test results.

attached to my affidavits in the federal cases and are a part of this record.

Brief of Appellees, Exhibit A at 3–4.

On October 3, 1986, the Trial Court denied appellants' motion for summary judgment. We have carefully reviewed the Court's Opinion in this matter. The Court stated that "[i]t is axiomatic that summary judgment can only be granted in the clearest of cases both as to the facts and as to the law. Since neither is clear in this case, we decline to grant the extreme remedy of summary judgment." Op. of Trial Court at 5. The Court concluded that a genuine issue of fact existed as to whether the appellees had suffered physical injury from the TMI nuclear incident. *Id.* at 3. The Court then cited *Moore v. Pavex, Inc.,* 356 Pa.Super. 50, 514 A.2d 137 (1986), for the proposition that in the context of nuclear accidents, "it may not be necessary to actually sustain physical injuries or property damage in order to recover economic losses." Op. of Trial Court at 4.

On March 30, 1987, the Trial Court, in accordance with 42 Pa. C.S.A. § 702(b), certified for permissive interlocutory review its Order denying summary judgment. Appellants then filed a petition for permission to appeal pursuant to Pa.R.A.P. 1311. Appellants' petition for permission to appeal was granted by a *per curiam* order of this Court dated July 30, 1987. The trial court certified the following controlling question of law for our review:

> Where plaintiffs waive the right to seek damages their properties might have suffered from contamination after a nuclear accident, are such accidents at nuclear power plants an exception to the general tort rule that a plaintiff must sustain personal injury or property damage as a prerequisite for recovery of economic loss?

In *Aikens v. Baltimore & Ohio R.R.,* 348 Pa.Super. 17, 501 A.2d 277 (1985), this Court expressly adopted the well-established rule that "no cause of action exists for negligence that causes only economic loss." *Id.,* 348 Pa.Superior Ct. at 21–22, 501 A.2d at 279. In doing so, we reasoned as follows:

... we note that allowance of a cause of action for negligent interference with economic advantage would create an undue burden upon industrial freedom of action, and would create a disproportion between the large amount of damages that might be recovered and the extent of the defendant's fault. *See* Restatement (Second) of Torts Sec. 766C, comment a (1979). To allow a cause of action for negligent cause of purely economic loss would be to open the door to every person or business to bring a cause of action. Such an outstanding burden is clearly inappropriate and a danger to our economic system. Accordingly, we decline to adopt the reasoning of the California Supreme Court in *J'Aire Corp. v. Gregory,* 24 Cal.3d 799, 157 Cal.Rptr. 407, 598 P.2d 60 (1979), and to extend negligence liability to embrace purely economic loss. Such an extension would clearly lead to problems in consistency and foreseeability, and could be harmful in scope.

*Id.* We decline to adopt a different rule of law under the specific facts of the instant case and to hold that economic losses are recoverable by these appellees, absent proof of any physical injury or property damage. The concerns we recognized in *Aikens* apply with equal weight to appellees' claims even though their claims arise from a nuclear generating facility accident. Our opinion in *Moore v. Pavex, Inc.,* 356 Pa.Super. 50, 514 A.2d 137 (1986) does not dictate a different result. In *Moore,* a construction worker using a jackhammer had ruptured a city water main and suit was brought to recover for economic loss suffered as a result of the rupture. The trial court had dismissed the action, concluding that there could be no recovery for economic loss by the plaintiffs who did not suffer *physical harm* to property in which they had a proprietary interest. This Court affirmed, stating that "if any of the class had suffered direct damage to property as a consequence of the rupture of the water main (such as flooding, destruction of property or personal injury)," economic harm would have been actionable. *Id.,* 356 Pa.Superior Ct. at 54, 514 A.2d at 139. Importantly, then, *Moore* reaffirmed the general rule

of law that economic losses may not be recovered in tort absent any physical injury or property damage. *See Aikens, supra.*

In *Moore*, this Court did discuss, in dicta, tort liability in the context of a nuclear incident. Specifically, we noted the case of *Commonwealth v. General Public Utilities*, 710 F.2d 117 (3d Cir.1983) wherein the plaintiffs had asserted a claim for damages for "lost work time" as a result of the TMI nuclear incident. *Id.* at 122. Although the plaintiffs were seeking to recover for economic loss only, plaintiffs had also alleged in their pleadings that "increased radioactivity and radioactive materials emitted during the nuclear incident permeated the entire area, and thus rendered the public buildings unsafe for a temporary period of time, and constituted a physical intrusion upon the plaintiffs' properties. This intrusion, plaintiffs argue, is a sufficient showing of physical harm or injury to permit plaintiffs to recover for damages flowing from such harm, including damages for the wages paid to workers who remained away from work but were nevertheless paid." *Id.* at 122–123. Although the Third Circuit Court of Appeals declined to express an opinion on whether plaintiffs' theory of damages would ultimately prevail on the merits, the Court did hold that "plaintiffs should be permitted to develop the facts upon which these contentions may be tested." *Id.* at 123. The Court therefore concluded that a summary judgment in favor of the defendants was not warranted.

In our opinion in *Moore*, we made the following statements:

Chernobyl has forever put to rest any question that *radiation or fallout* from a meltdown of a nuclear plant does not directly cause injury to persons or property with which it *comes into contact*. The injury, while not always immediately ascertainable is direct and predictable, and for persons *not* to move immediately from a fallout zone to avoid possible incredible consequences, is folly and unsupportable. Any economic loss resulting from such a scenario *is* directly attributable to the meltdown.

The meltdown is predictable and hopefully preventable and entirely within the control of superspecialists to whom we have entrusted our environment and our lives. This is no mere rupture of a waterpipe. It is clearly distinguishable.

*Moore, supra* 356 Pa.Super. at 55–56, 514 A.2d at 140 (emphasis added). Contrary to arguments advanced by appellees, this language from *Moore* is consistent with the rule of law we announced in *Aikens.* These statements recognize that persons or property who have come into contact with radiation or fallout will suffer a direct and predictable actual injury, despite the fact that this injury may not be immediately visible to the naked eye. This fact does not relieve the burden which rests upon the appellees instantly to prove that the TMI nuclear incident has resulted in actual physical injury or property damage in order for appellees to state a cause of action for economic loss.[7]

■ The trial court expressly found that a material issue of fact exists as to whether the TMI nuclear incident caused the appellees to suffer physical injury. Op. of Trial Court at 3. In passing upon a motion for summary judgment, the court must examine the record in the light most favorable to the nonmoving party. *Pocono International Raceway, Inc. v. Pocono Produce, Inc.,* 503 Pa. 80, 83, 468 A.2d 468, 470 (1983). It is not part of the court's function to decide issues of fact to be tried but solely to determine whether there is an issue of fact to be tried. *Wilk v. Haus,* 313 Pa.Super. 479, 482, 460 A.2d 288, 290 (1983). Any doubt must be resolved against the moving party. *Chorba v. Davlisa Enterprises, Inc.,* 303 Pa.Super. 497, 500, 450 A.2d 36, 38 (1982). With these principles in mind and with the recognition that we are expressing no opinion on the merits of appellees' cause of action, we find no error in the order

7. We need not decide whether a different rule of tort law will ever be applied in the context of a nuclear incident. Hopefully, after the alarming experience of the accident at TMI, future nuclear accidents will be preventable. In any event, we have determined that as to these parties, the traditional rules of our tort law are applicable.

of the trial court denying appellants' motion for summary judgment.

Order affirmed.