**DAVID PFLUMM PAVING &
EXCAVATING, INC.,**
Appellant

v.

**FOUNDATION SERVICES COMPANY,
F.T. Kitlinski & Associates, Inc., Bas-
co Associates, P.C., Inc., and Buchart–
Horn, Inc., Appellees.**

Superior Court of Pennsylvania.

Submitted Oct. 7, 2002.
Filed Feb. 3, 2003.

instructive.

James F. Heinly, Lancaster, for appellant.

John J. Sylvanus, York, for Basco Associates and Buchart-Horn, Inc., appellees.

C. Grainger Bowman, Harrisburg, for Foundation Services and F.T. Kitlinski & Associates, appellees.

Before: MUSMANNO, GRACI, and MONTEMURO,* JJ.

GRACI, J.

¶ 1 Appellant, David Pflumm Paving & Excavating, Inc. ("Pflumm"), appeals from the Order entered on January 17, 2002, granting the motion for summary judgment filed by Appellees, Foundation Services Company ("Foundation Services"), F.T. Kitlinski & Associates, Inc. ("Kitlinski"), Basco Associates, P.C., Inc. ("Basco"), and Buchart-Horn, Inc. ("Buchart-Horn"). After careful review, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

¶ 2 This case arose from events surrounding the construction of the Derry Township Public Library. Pflumm is an excavation contractor that subcontracted with Lobar, Inc. ("Lobar") to do the excavation for the library, Foundation Services and Kitlinski are affiliated entities that contracted with Derry Township to perform subsurface testing necessary for the foundation design and to prepare a report to assist in the design of the library, and Basco and Buchart-Horn are affiliated entities that contracted with Derry Township to perform architectural and engineering services in the design of the library. Pflumm did not enter into any contracts with Foundation Services, Kitlinski, Basco, or Buchart-Horn.

¶ 3 In July 1993, Buchart-Horn surveyed and staked out boring locations at the library site. Foundation Services and Kitlinski then performed borings and issued a report on its geological engineering investigation for the design of the library to the township and Basco.

¶ 4 In September 1995, more than two years after the issuance of the Foundation Services/Kitlinski report, Basco prepared the bid documents and advertised the construction project for bid on behalf of Derry Township. Instructions notified prospective bidders that:

> Certain data concerning subsurface materials or conditions has been obtained in the area of the proposed project and is available for review. Its accuracy or completeness is not guaranteed by the OWNER [i.e., Derry Township] and in no event is to be considered as part of the Contract Documents. The CONTRACTOR must assume all risks in excavating for this Project and shall not be entitled to rely on any subsurface information obtained for the OWNER.... Bidders shall make their own investiga-

---

* Retired Justice assigned to the Superior Court.

tion of existing subsurface conditions and if they do not do so, the OWNER will not be responsible in any way for the consequences. . . .

Answer and New Matter of Basco and Buchart–Horn, Exhibit 3, 1/13/97.

¶ 5 The information that was available for review included a drawing of the site layout plan. Pflumm also obtained a copy of the Foundation Services/Kitlinski report from one of the competing general contractors. Attached to that report was a drawing showing locations of the borings performed by Kitlinski. Pflumm prepared its site work subcontract proposal based on the report and drawing. This drawing, however, which was done in 1993, two years prior to the solicitation of bids, erroneously showed a different location for the building and, therefore, was different than the drawing made available to bidders by Basco.

¶ 6 In October 1995, Pflumm submitted its subcontract proposal to Lobar, who was awarded the contract. The conditions to the contract again reiterated:

Available data concerning subsurface materials or conditions, which is based upon soundings, test pits or test borings, has been obtained by the ARCHITECT for their own use in designing the Project. Its accuracy or completeness is not guaranteed by the OWNER or the ARCHITECT and in no event is it to be considered as part of the Contract Drawings or Specifications. The CONTRACTOR must assume all risks in excavating for this Project and shall not be entitled to rely on any subsurface information obtained for the ARCHITECT or indirectly for the OWNER. Said subsurface information is available at the office of the ARCHITECT, and prospective bidders may obtain this information by applying to the ARCHITECT. Bidders will be re-

quired to sign a Standard Form of Receipt for subsurface information, and such bidders accept such subsurface information in accordance with the provisions of this section. Bidders shall, therefore, make their own investigation of existing subsurface conditions and if they do not do so, the OWNER will not be responsible in any way for the consequences.

Answer and New Matter of Basco and Buchart–Horn, Exhibit 2, 1/13/97. Moreover, the contract, as acknowledged by Pflumm, stated:

BIDDER covenants and warrants that he has had sufficient time to examine the site of the Work; that he has examined the site of the Work; and that he has based the within Contract Prices on his own independent examination and investigation of the site, subsurface materials, and conditions and has not relied on any subsurface information furnished to him by OWNER or ARCHITECT. . . .

Answer and New Matter of Basco and Buchart–Horn, Exhibit 5, 1/13/97. In November 1995, Pflumm entered into a subcontract agreement with Lobar.

¶ 7 In March 1996, Pflumm encountered a large quantity of rock. Because blasting was prohibited, the rock had to be broken out, and Pflumm incurred great expense. Pflumm brought suit for negligence, negligent misrep-resentation, and fraudulent misrepresentation against Foundation Services, Kitlinski, Buchart–Horn, and Basco. Pflumm's only damage claims were for economic loss suffered when Pflumm relied on the 1993 report and drawing's allegedly false representation that rock would not be encountered during excavation.

¶ 8 Before the date scheduled for trial, Foundation Services, Kitlinski, Basco, and

Buchart–Horn filed a joint motion for summary judgment, arguing that Pflumm's negligence claims were barred by the "economic loss doctrine" and that there was no evidence to support Pflumm's misrepresentation claims. On January 17, 2002, the lower court filed an opinion agreeing with Foundation Services, Kitlinski, Basco, and Buchart–Horn and granting the motion. On February 15, 2002, Pflumm filed a timely notice of appeal.

¶ 9 Pflumm now presents the following questions for our review:

1. Whether Restatement (Second) of Torts § 552, entitled "Information Negligently Supplied for the Guidance of Others", governs actions in Pennsylvania where, as here, the facts fall within its provisions.

2. Whether the Economic Loss Doctrine applies to actions under Restatement (Second) of Torts § 552.

3. Whether the lower court erred in granting summary judgment against Plaintiff's claims for negligent misrepresentation.

4. Whether the lower court erred in granting summary judgment against Plaintiff's claims for fraudulent misrepresentation.

Appellant's Brief, at 3.

## II. DISCUSSION

¶ 10 At the outset, we note:

[W]hen considering whether the trial court erred in granting summary judgment, our review is plenary. *Kleban v. National Union Fire Insurance Co.*, 771 A.2d 39, 42 (Pa.Super.2001). Moreover, this Court is not bound by the conclusions of law of the trial court, as we may reach our own conclusions and draw our own inferences. *Adamski v. Allstate Ins.*, 738 A.2d 1033 (Pa.Super.1999), *appeal denied*, 563 Pa. 655, 759 A.2d 381

(2000) (citation omitted). We may disturb the trial court's order only upon a finding of an error of law or abuse of discretion. *Bostick v. Schall's Brakes and Repairs, Inc.*, 725 A.2d 1232, 1236 (Pa.Super.1999), *appeal denied*, 560 Pa. 694, 743 A.2d 912 (1999). In determining whether summary judgment was properly granted, this Court applies the same standard as the trial court. *Harber Philadelphia Center City Office Limited v. LPCI Ltd. Partnership*, 764 A.2d 1100, 1103 (Pa.Super.2000), *appeal denied*, 566 Pa. 664, 782 A.2d 546 (2001) (citation omitted).

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. . . . In determining whether to grant summary judgment a trial court must resolve all doubts against the moving party and examine the record in a light most favorable to the non-moving party. Summary judgment may only be granted in cases where it is clear and free from doubt the moving party is entitled to judgment as a matter of law.

*Schwartzberg v. Greco*, 793 A.2d 945, 947 (Pa.Super.2002) (quoting *Piluso v. Cohen*, 764 A.2d 549, 550 (Pa.Super.2000), *appeal denied*, 568 Pa. 633, 793 A.2d 909 (2002) (citations omitted)).

*Holland ex rel. Holland v. Marcy*, —— A.2d ——, ——, 2002 WL 31706861, at *2 (Pa.Super. Filed December 4, 2002).

¶ 11 Pflumm first argues that Section 552 of the Second Restatement of Torts applies in Pennsylvania. Appellant's Brief, at 16–19. Section 552 provides:

§ 552. Information Negligently Supplied for the Guidance of Others

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

Restatement (Second) of Torts § 552.

¶ 12 This Court has already determined that Section 552 applies to claims of negligent misrepresentation. *See Woodward v. Dietrich*, 378 Pa.Super. 111, 548 A.2d 301, 308 (1988). However, this Court has indicated that while Section 552 applies in Pennsylvania, it applies only in cases where the plaintiff alleges loss that is not solely economic. In *Little v. York County Earned Income Tax Bureau*, 333 Pa.Super. 8, 481 A.2d 1194 (1984), for example, this Court affirmed a jury's verdict of more than $20,000.00 for negligent misrepresentation that resulted in emotional harm. Moreover, in *Baker v. Cambridge Chase, Inc.*, 725 A.2d 757 (Pa.Super.1999), this Court found that the pleadings appeared to make out a claim for negligent misrepresentation that resulted in a defective deed.[1]

¶ 13 Based on the above-referenced cases, then, it is clear that our Courts have only permitted recovery under Section 552 where the plaintiff has suffered losses in addition to his economic loss.

■ ¶ 14 These holdings are consistent with our cases regarding the economic loss doctrine raised in Pflumm's second issue. Pflumm argues that the economic loss doctrine does not preclude its right to recover under Section 552. We disagree. This Court has consistently denied negligence claims that cause only economic loss. In *Aikens v. Baltimore and Ohio Railroad Company*, 348 Pa.Super. 17, 501 A.2d 277 (1985), employees of a plant damaged by a train derailment filed a lawsuit against the railroad for lost wages. This Court held that "no cause of action exists for negligence that causes only economic loss." *Id.* at 279. The Court reasoned that

negligent harm to economic advantage alone is too remote for recovery under a negligence theory. The reason a plain-

---

1. In *Mill–Mar, Inc. v. Statham*, 278 Pa.Super. 296, 420 A.2d 548, 550 (1980), this Court stated that "section 552 should govern actions in this jurisdiction whose facts fall within its provisions." However, the Court rejected the Section 552 claim since the appellants did not allege all of the elements necessary for negligent misrepresentation. Section 552 claims also arose in *Sevin v. Kelshaw*, 417 Pa.Super. 1, 611 A.2d 1232 (1992), and in *Bortz v. Noon*, 556 Pa. 489, 729 A.2d 555 (1999). However, the Courts in both of those cases rejected the Section 552 claims because the facts in each of those cases did not trigger Section 552's application.

tiff cannot recover stems from the fact that the negligent actor has no knowledge of the contract or prospective relation and thus has no reason to foresee any harm to the plaintiff's interest.

*Id.* (citations omitted). The Court added that "allowance of a cause of action for negligent interference with economic advantage would create an undue burden upon industrial freedom of action, and would create a disproportion between the large amount of damages that might be recovered and the extent of the defendant's fault." *Id.* (citation omitted).

> To allow a cause of action for negligent cause of purely economic loss would be to open the door to every person in the economic chain of the negligent person or business to bring a cause of action. Such an outstanding burden is clearly inappropriate and a danger to our economic system... [Extending negligence liability to embrace purely economic loss] would clearly lead to problems in consistency and foreseeability, and could be harmful in scope.

*Id.*

¶ 15 A few years later, this Court applied the economic loss principle established by the *Aikens* Court in *General Public Utilities v. Glass Kitchens of Lancaster, Inc.*, 374 Pa.Super. 203, 542 A.2d 567 (1988), which involved an appeal from an order denying appellants' motion for summary judgment. In *General Public Utilities*, the appellees were corporations associated with the Pennsylvania Dutch tourist industry. The appellees alleged that the appellants' design and construction, *inter alia*, of the Three Mile Island nuclear facility caused the 1979 accident, which resulted in a diminution in the number of tourists who visited Lancaster County. Citing *Aikens*, the Court declined "to adopt a different rule of law ... and to hold that economic losses are recov-

erable ... absent proof of any physical injury or property damage." *Id.* at 570. According to the Court, "[t]he concerns we recognized in *Aikens* apply with equal weight to appellees' claims even though their claims arise from a nuclear generating facility accident." *Id.*

¶ 16 More recently, this Court appeared to have applied the economic loss doctrine in a case involving facts similar to those in the instant case. In *Linde Enterprises, Inc. v. Westmoreland Engineering Co., Inc.*, 412 Pa.Super. 67, 602 A.2d 897 (1991), Westmoreland appealed a judgment in favor of Linde, arguing that Linde could not recover against Westmoreland in negligence because there was an absence of privity between Linde and Westmoreland. Linde was the low bidder on a contract for the reconstruction of a dam by the Hazelton City Authority ("Hazelton") and was awarded the job. Hazelton hired Westmoreland, an engineering firm, to provide the specifications for the dam and to supervise its construction. Significant cost overruns occurred on parts of the project. Claiming that these cost overruns were due to faulty specifications provided to it by Hazelton and negligent supervision by Hazelton's agent, Westmoreland, Linde filed suit against Hazelton. Hazelton, in turn, joined Westmoreland.

¶ 17 On appeal, Linde claimed, *inter alia*, that Westmoreland owed a duty under Pennsylvania law to contractors or subcontractors as an architect drawing up specifications for the job to the contractor to exercise due care in drawing up specifications. This Court, however, concluded that, although "[s]everal states have allowed a contractor to sue an architect for economic damages suffered by the negligent drafting of design specifications despite the absence of privity," Pennsylvania is "not one of them." *Linde*, 602 A.2d at 901.

■ ¶ 18 Although negligence actions pursuant to Section 552 may lie where there is loss that is not solely economic, *see Little* and *Baker, supra,* as this Court explained in *Aikens* and *General Public Utilities* and indicated in *Linde,* the economic loss doctrine precludes recovery in negligence actions for injuries which are solely economic.

¶ 19 In its brief, Pflumm cites the following language from Comment *a* to Section 552 to support its argument that the economic loss doctrine does not preclude its claim under Section 552:

> When the harm that is caused is only pecuniary loss, the courts have found it necessary to adopt a more restricted rule of liability, because of the extent to which misinformation may be, and may be expected to be, circulated, and the magnitude of the losses which may follow from reliance upon it.

Appellant's Brief, at 20. (citing Restatement (Second) of Torts, § 552, Comment *a*). However, related Comment *i* explains:

> [W]hen the misrepresentation is merely negligent and results in pecuniary loss, the scope of the liability is narrower. The maker of the negligent misrepresentation is subject to liability to only those persons for whose guidance he knows the information to be supplied, and to them only for loss incurred in the kind of transaction in which it is expected to influence them, or a transaction of a substantially similar kind. There is an exception, as stated in Subsection (3), when there is a public duty to give the information.

Restatement (Second) of Torts, § 552, Comment *i.* In the instant case, none of the defendants provided the 1993 report, including the drawing, to Pflumm for its guidance in submitting *its* bid. Likewise, none of them provided that report to the township or Lobar for Pflumm's guidance in submitting its bid. Moreover, the defendants were under no public duty to give the information to Pflumm. Therefore, Comment *a* does not support Pflumm's argument that the economic loss doctrine does not prevent its claim under Section 552.

¶ 20 In its brief, Pflumm also cites the following illustration of Section 552 to support its argument that the economic loss doctrine does not preclude its claim under Section 552:

> The City of A is about to ask for bids for work on a sewer tunnel. It hires B Company, a firm of engineers, to make boring tests and provide a report showing the rock and soil conditions to be encountered. It notifies B Company that *the report will be made available to bidders as a basis for their bids and that it is expected to be used by the successful bidder in doing the work.* Without knowing the identity of any of the contractors bidding on the work, B Company negligently prepares and delivers to the City an inaccurate report, containing false and misleading information. On the basis of the report C makes a successful bid, and also on the basis of the report D, a subcontractor, contracts with C to do a part of the work. By reason of the inaccuracy of the report, C and D suffer pecuniary loss in performing their contracts. B Company is subject to liability to C and to D.

Appellant's Brief, at 21–22 (citing Restatement (Second) of Torts, § 552, Illustration 9) (emphasis added).

¶ 21 We have no particular disagreement with a finding of liability under those circumstances. However, the instant case is distinguishable from Illustration 9 because the plaintiff in Illustration 9 was informed that the report *was to be used by the*

*bidder in doing its work.* In the instant case, however, bidders were specifically told not to rely on the report and to perform their own subsurface investigation. *See supra.* Therefore, Illustration 9 does not support Pflumm's argument that the economic loss doctrine does not prevent its claim under Section 552. Accordingly, we reject this argument.

¶ 22 Pflumm's third argument is that the lower court erred in granting summary judgment on its claims for negligent misrepresentation. Appellant's Brief, at 26–32. Because, as explained above, Pflumm's claims for negligent misrepresentation are solely economic, they are precluded by the economic loss doctrine.

▆▆▆ ¶ 23 Pflumm's final argument is that the lower court erred in granting summary judgment on its claims for fraudulent misrepresentation. Appellant's Brief, at 32–33.[2] The elements of intentional or fraudulent misrepresentation are as follows:

(1) A representation;

(2) which is material to the transaction at hand;

(3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false;

(4) with the intent of misleading another into relying on it;

(5) justifiable reliance on the misrepresentation; and,

(6) the resulting injury was proximately caused by the reliance.

*Bortz,* 729 A.2d at 560 (*Gibbs v. Ernst,* 538 Pa. 193, 647 A.2d 882, 889 (1994), *citing* Restatement (Second) of Torts § 525 (1977)).

¶ 24 In the instant case, there is no evidence of Foundation Services, Kitlinski, Basco, and Buchart–Horn's intent to mislead Pflumm into relying on the information. Pflumm's complaint does not allege an intention to mislead, and our review of the record revealed no evidence to support an intent to mislead. Moreover, Pflumm was told in the bid documents, and Pflumm acknowledged, that it was not to rely on the documents allegedly containing the misleading information.[3] Therefore, the lower court did not abuse its discretion in granting summary judgment on Pflumm's fraudulent misrepresentation claims.

### III. CONCLUSION

¶ 25 In sum, we hold that Pennsylvania allows suit for negligent misrepresentation, consistent with Section 552 of the Restatement (Second) of Torts, where such misrepresentation results in harm other than mere economic loss. However, the economic loss doctrine bars claims under Section 552 which result in solely economic loss. Where a plaintiff asserts negligent misrepresentation and seeks only damages for economic loss, the defendant is entitled to judgment as a matter of law. Where a plaintiff asserts fraudulent misrepresentation without showing that the defendant intended to mislead the plaintiff into reliance on the misrepresentation, the defendant is entitled to judgment as a matter of law.

¶ 26 Order affirmed.

---

**2.** There are no Pennsylvania Supreme Court or Superior Court cases that indicate that the economic loss doctrine bars a claim for fraudulent misrepresentation. However, for the reasons stated in the text, we need not address that issue in this case.

**3.** We note, as well, that the Foundation Services/Kitlinski report was not even part of the bid documents, as explained above.