**DUQUESNE LIGHT COMPANY,**
Appellant,

v.

**PENNSYLVANIA AMERICAN WATER COMPANY.**

Superior Court of Pennsylvania.

Argued Jan. 27, 2004.
Filed May 11, 2004.

Bradley S. Tupi, Pittsburgh, for appellant.

Avrum Levicoff, Pittsburgh, for appellee.

Before: FORD ELLIOTT, JOYCE, and TAMILIA, JJ.

OPINION BY FORD ELLIOTT, J.:

¶ 1 This is an appeal from an order entering summary judgment in favor of Pennsylvania American Water Company ("water company") in an action Duquesne Light Company ("electric company") brought to recover economic damages it sustained as the result of a chemical leak at water company's plant. We affirm.

¶ 2 On December 15, 1999, liquid chlorine leaked from a tank at water company's treatment and pumping station in Washington County. Because liquid chlorine becomes a hazardous gas when exposed to air, emergency personnel evacuated a five-block area around the station, including electric company's Elrama generating station. Several electric company employees chose to remain at the station, however, to shut down the generators safely so as to preclude extensive damage to the machinery. Two of the generators returned to service the same day, while a third returned to service several days later.

¶ 3 As a result of the shutdown and evacuation, electric company was unable to produce electric power and was therefore forced to purchase the electric power from other sources to supply its customers. Electric company also maintained that several of its employees were taken to the emergency room of a local hospital where they were treated for headache, nausea, sore throat, and/or high blood pressure.

¶ 4 Electric company filed a complaint on December 6, 2001, in which it brought two counts, one sounding in negligence and one in nuisance. As to both counts, electric company claimed economic losses in the amount of $201,000 and employee medical expenses in the amount of $1,400. Water company filed its answer and new matter, after which the parties engaged in discovery. On or about December 26,

2002, water company filed its motion for summary judgment. On May 5, 2003, the trial court granted the motion and dismissed electric company's complaint. This timely appeal followed, in which electric company raises the following issues:

> Are [electric company's] claims barred, in their entirety, by the Economic Loss Doctrine despite the undisputed fact that it would have sustained property damages but for its own actions to mitigate its damages?

> Are [electric company's] claims barred, in their entirety, by the Economic Loss Doctrine despite the undisputed fact that several of its employees suffered personal injuries?

> Are [electric company's] claims barred, in their entirety, by the Economic Loss Doctrine despite the fact that [water company] failed to raise that Affirmative Defense in its New Matter?

Appellant's brief at 4.

¶ 5 "This Court's scope of review of an order granting summary judgment is plenary." *Basile v. H & R Block, Inc.*, 563 Pa. 359, 365, 761 A.2d 1115, 1118 (2000), citing *O'Donoghue v. Laurel Savings Ass'n*, 556 Pa. 349, 354, 728 A.2d 914, 916 (1999). "Our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or clearly abused its discretion." *Id.*, citing *Cochran v. GAF Corp.*, 542 Pa. 210, 215, 666 A.2d 245, 248 (1995). "Summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Id.*, citing *P.J.S. v. Pennsylvania State Ethics Comm'n*, 555 Pa. 149, 153, 723 A.2d 174, 175 (1999). "The reviewing court must view the record in the light most favorable to the nonmoving party, resolving all doubts as to the exis-

tence of a genuine issue of material fact against the moving party." *Id.*, citing *P.J.S.*, *supra* at 153, 723 A.2d at 175. "When the facts are so clear that reasonable minds cannot differ, a trial court may properly enter summary judgment." *Id.*, citing *Cochran*, *supra* at 215, 666 A.2d at 248.

■ ¶ 6 This court adopted the "majority rule of the Restatement (Second) of Torts Sec. 766C[,]" applicable to negligent interference with contract or prospective contractual relation, in *Aikens v. Baltimore and Ohio R.R. Co.*, 348 Pa.Super. 17, 501 A.2d 277 (1985). The *Aikens* court held that "no cause of action exists for *negligence* that causes only economic loss." *Id.* at 279 (emphasis added). According to the *Aikens* panel, "The roots of this well-established rule reach back to the United States Supreme Court decision of *Robins Dry Dock and Repair Company v. Flint*, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927)[,] ..." in which Mr. Justice Holmes opined, *inter alia*, " '[A]s a general rule, at least, a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other unknown to the doer of the wrong.' " *Aikens*, 501 A.2d at 278–279, quoting *Robins*, 275 U.S. at 309, 48 S.Ct. 134.

¶ 7 More recently, in *David Pflumm Paving & Excavating, Inc. v. Foundation Services, F.T.*, 816 A.2d 1164 (Pa.Super.2003), this court held that the economic loss doctrine barred recovery in an action brought pursuant to § 552 of the Restatement (Second) of Torts, applicable to information negligently supplied for the guidance of others. *Id.* at 1168. The *Pflumm* court relied on *Aikens*, *supra*, and *Robins*, *supra*, and also cited *General Public Utilities v. Glass Kitchens of Lancaster, Inc.*, 374 Pa.Super. 203, 542 A.2d 567 (1988), for

the proposition that Pennsylvania does not allow recovery for solely economic losses sustained as a result of another's negligence.

¶ 8 In *Glass Kitchens*, this court was asked to decide whether the economic loss doctrine operated to bar claims by companies that sustained an economic loss in the form of a diminution in the tourist industry in Lancaster County, approximately 25 miles away, following the nuclear incident at Three Mile Island ("TMI"). Reviewing the case law, the *Glass Kitchens* court held that the doctrine applied, and distinguished the case before it from those incidents in which individuals or industries suffered actual exposure to "noble gases," of which the direct and predictable actual injuries, although certain, may not always be immediately visible to the naked eye. *Id.* at 569, 571.

¶ 9 We find particularly instructive the *Glass Kitchens'* court's discussion of *Moore v. Pavex, Inc.,* 356 Pa.Super. 50, 514 A.2d 137 (1986). In *Moore,* construction workers using a jackhammer ruptured a water line, causing an interruption in water service to the communities the line served. Appellants, who were residents and corporations served by the water line, alleged they suffered a variety of harms from the contractors' negligence, "ranging from 'individual and familial suffering' and 'loss of wages' to 'sums expended for bottled water or other replacement water' and 'operating losses'." *Id.* at 138.

¶ 10 Finding that the economic loss doctrine barred the complainants' recovery for private nuisance, the *Moore* court opined, "The facts in this case are squarely on all fours with *Aikens,* [cited] *supra,* and *Robins,* [cited] *supra,* in that the economic harm was not direct and foreseeable." *Id.* at 139. As the *Moore* court maintained, "If any of the class had suffered direct damage to property as a consequence of

the rupture of the watermain (such as flooding, destruction of property or personal injury), those unquestionably would be actionable." *Id.* Continuing, the *Moore* court observed, "Such was not the case; 'individual and familial suffering', 'loss of wages', 'replacement or bottled water' and operating losses are no more direct foreseeable damages, economic losses or *serious risks of health and safety* than are lost wages in *Aikens* and in *Robins."* *Id.* (emphasis in *Moore*).

¶ 11 Electric company next argues that neither the trial court nor water company cited any cases holding that the economic loss doctrine bars recovery for a public nuisance. (Appellant's brief at 27.) As electric company observes, "A public nuisance is different from a private nuisance in that it exists where an action affects the community at large." (*Id.,* citing *Karpiak v. Russo,* 450 Pa.Super. 471, 676 A.2d 270, 274 (1996).) To succeed on a claim for public nuisance, however, the plaintiff must have suffered a special or peculiar harm, different from the harm suffered by the general public.

¶ 12 We have reviewed the trial court's opinion granting summary judgment and find no discussion of public nuisance or the application of the economic loss doctrine thereto, despite the fact that electric company argued the issue in its brief in opposition to water company's motion for summary judgment. (Brief in opposition to motion for summary judgment, 1/24/03 at 9–10, R. at 21.) We have also reviewed the federal district court case upon which electric company relies, as well as Pennsylvania case law. As a result of our review, we affirm the trial court's order entering summary judgment.

¶ 13 As water company argues, Pennsylvania has never recognized a private cause of action for public nuisance. (Appellee's

brief at 15 n. 10.) We are aware that in *Rohm and Haas Co. v. Continental Cas. Co.*, 566 Pa. 464, 781 A.2d 1172 (2001) (opinion announcing the judgment of the court), our supreme court opined:

> While there was no private right of action [for public nuisance] at the time [the Clean Streams Law was enacted in 1937], the act did and still does provide for abatement of the nuisance; in 1964 the act gave the Chief Environmental Administrator the power to compel companies to clean up pollution and remedy environmental damage caused by their operations. *See e.g.,* 35 P.S. §§ 691.5, 691.316, 691.501, 691.503, 691.601, 691.602, 691.604, 691.605, and 691.610. Notwithstanding any liability that might arise as a result of state or federal statutory enactments, Rohm & Haas certainly should have realized that the gross contamination of the Whitmoyer site would likely have constituted *a public nuisance, a long recognized source of common law liability.*

*Id.* at 474 n. 5, 781 A.2d at 1178 n. 5 (emphasis added). This language is, nonetheless, dicta.

¶ 14 We also recognize that "when presented with an issue for which there is no clear precedent, our role as an intermediate appellate court is to resolve the issue as we predict our Supreme Court would do." *State Farm Mutual Automobile Ins. Co. v. Universal Underwriters Ins. Co.,* 441 Pa.Super. 446, 657 A.2d 1252, 1260 (1995), *reversed on other grounds,* 549 Pa. 518, 701 A.2d 1330 (1997). In this case, however, while the language quoted *supra* may indicate our supreme court's willingness to adopt a private cause of action for public nuisance, it does not indicate whether the parameters of such a cause of action would include claims involving purely economic loss. In view of Pennsylvania's strong, oft-stated public policy of barring recovery for economic losses sustained as a result of another's tortious conduct, we are not at liberty to ignore that policy under the facts this case presents.

¶ 15 Electric company asks us to adopt the analysis of a Pennsylvania district court case, however, for the proposition that the economic loss doctrine does not apply to the tort of public nuisance. In *In re One Meridian Plaza Fire Litigation* ("*Fire Litigation*"), 820 F.Supp. 1460 (E.D.Pa.1993), *reversed on other grounds sub nom. Federal Ins. Co. v. Richard I. Rubin & Co., Inc.,* 12 F.3d 1270 (3rd Cir.(Pa.) 1993), *cert. denied sub nom. Ejay Travel, Inc. v. Algemeen Burgerlijk Pensioenfonds,* 511 U.S. 1107, 114 S.Ct. 2101, 128 L.Ed.2d 663 (1994), the district court reviewed the law of public nuisance as set forth in Section 821B of the Restatement (Second) of Torts, as well as numerous Pennsylvania cases, most of which we have discussed *supra,* interpreting the economic loss doctrine.[1] *See Fire Litigation,* 820 F.Supp. at 1473–1474 (discussing the economic loss doctrine generally). *See also id.* at 1480–1482 (discussing the tort of public nuisance and its applicability to facts of that case).

¶ 16 We find worthy of consideration the district court's conclusion that the economic loss doctrine should not apply to the tort of public nuisance.[2] As the *Fire Litigation* court observed:

---

1. The Third Circuit Court of Appeals reversed the district court based upon its finding that the district court committed an error of law in concluding that the Dutch parent corporations, whose subsidiary owned 65 percent of the partnership that owned the Meridian Plaza office building, were proper defendants under the commercial activity exception to the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. §§ 1602–1611. *Federal Ins. Co.,* 12 F.3d at 1276–1277, 1291.

2. We are not bound by federal district court opinions interpreting Pennsylvania law, but may use them for guidance where their analy-

Section 821B of the Restatement defines public nuisance as follows:

> (1) A public nuisance is an unreasonable interference with a right common to the general public.
>
> (2) Circumstances that may sustain a holding that an interference with a public right is unreasonable include the following:
>
>> (a) Whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or
>>
>> (b) whether the conduct is proscribed by a statute, ordinance or administrative regulation, or
>>
>> (c) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.

*Fire Litigation*, 820 F.Supp. at 1480, quoting Restatement (Second) of Torts § 821B.

¶ 17 Continuing, the *Fire Litigation* court opined, "It is clear that the economic loss doctrine is not applicable to public nuisance claims ...." *Id.* The basis for the court's determination rested on the element of a public nuisance claim requiring the plaintiff to have suffered a "harm of a kind different from that suffered by other members of the public exercising the right common to the general public that was the subject of the interference." *Id.*, quoting Restatement (Second) of Torts § 821C. As the *Fire Litigation* court observed,

> It is clear that the special harm requirement is intended to serve the same pur-

pose as the economic loss doctrine: to limit liability arising from an event. Public nuisances, by definition, affect many people. If every person or entity injured from a public nuisance could recover economic or even property damages, liability could be exorbitant; thus, only those plaintiffs who suffer special harm may recover.

*Id.* at 1481.

¶ 18 When discussing the economic loss doctrine, the *Fire Litigation* court first noted its origins in *Robins Dry Dock and Repair, supra.* *Fire Litigation,* 820 F.Supp. at 1473. The district court also observed that:

> [t]he Supreme Court revisited the doctrine in *East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), and concluded that the dismissal of claims for economic loss of parties who had suffered only economic loss was a sensible restriction to the potential liability occasioned by a single event[.]

*Fire Litigation,* 820 F.Supp. at 1473. Continuing, the *Fire Litigation* court opined:

> The doctrine is meant to protect a tortfeasor from tremendous liability for a single act. This is concisely explained by the court in *Stevenson v. East Ohio Gas Co.,* 47 Ohio Law Abs. 586, 73 N.E.2d 200 (1946):
>
>> If one who by his negligence is legally responsible for an explosion or a conflagration should be required to respond in damages not only to those who have sustained personal injuries or physical property damage but also to every one who has suffered an eco-

sis is sound. *See Winslow–Quattlebaum v. Maryland Cas. Co.,* 723 A.2d 681, 684 (Pa.Super.1998) (a federal court's interpretation of state law does not bind state courts; instead, state courts are the principal interpreters of state law) (citation omitted), *reversed on other grounds,* 561 Pa. 629, 752 A.2d 878 (2000).

nomic loss, by reason of the explosion or conflagration, we might well be appalled by the results that would follow.

*Id.,* quoting *Stevenson, supra.*

¶ 19 Even though we may find the *Fire Litigation* court's analysis worthy of note, however, we, as an intermediate appellate court, must defer to our supreme court when deciding whether to recognize a new cause of action under Pennsylvania tort law. This is especially so where, as here, such recognition would require us to reexamine public policy questions that our supreme court has previously addressed.

¶ 20 Order granting summary judgment to water company is affirmed.