This case arose from the filing of a bill in equity to compel the City of Philadelphia to proceed with the work of widening 15th Street in Philadelphia, with a prayer "for such damages as the court may ascertain to be due to the plaintiffs by reason of the unlawful obstruction of 15th Street and interference with the plaintiffs' rights therein."
On June 1, 1929, an ordinance of city council approved the widening of 15th Street, requiring the taking of 18 feet from the east side of that street, from South Penn Square to Chestnut Street. Pursuant to this ordinance plaintiffs were directed to vacate the portion to be taken from their property. On September 13, 1929, the city entered into possession and two days later leased the vacated portion of the building to Narciso Ambrogi, one of the defendants. The plot had a frontage on 15th Street of seventeen feet and a depth, eastward along the north side of Ranstead Street, of ninety-six feet. The premises were improved with a three-story brick building used for business purposes, fronting on Fifteenth Street and covering substantially the entire area of the lot. After appropriate proceedings before the Board of View the owners were awarded damages of $78,000 on July 9, 1930, for the taking of eighteen feet in depth of the frontage of this property. The award was settled by the city on December 22, 1931, for $75,000, which included accrued interest, and also as an element of damages the cost of constructing a new and *Page 339 
usable front for the building after the eighteen feet had been removed.
Plaintiffs filed their bill in equity on February 3, 1933, to compel the city to proceed with the work, with a prayer for damages for the delay. The work on the physical widening of the street was commenced on February 7, 1934, and completed on April 30, 1934, i. e., twenty-two working days, except for repaving the street.
Defendant city's answer averred, inter alia, that the Director of Public Works did all that he could do without the appropriation of money that was necessary for the construction work, and that the Board of View ascertained the damages to the property owners, which damages the city subsequently paid.
Both plaintiffs and defendants produced as witnesses real estate experts who variously estimated the rental value of this property from $17,800 to $22,912 for the period beginning September 13, 1929, and ending May 1, 1934, and who also testified that after the demolition of the portion of the building taken by the city there would of necessity be required expenditures, estimated at $7,500 and $10,000, to the balance of plaintiffs' building in order to rent it. One of these witnesses testified that in his opinion it would cost little more to build a new building, which he estimated could be done for $12,000.
The chancellor's findings of fact based on the evidence are in condensed form as follows: Between September 13, 1929, and December 4, 1933, the city received as rent from thecondemned part of the property $9,550. From the former date to the date of the trial the remainder of the property has been untenanted. As a result of the condemnation and the delay in the widening of the highway, complainants had no access to their property from Fifteenth Street from September 13, 1929, to May 1, 1934. The net rental value of the premises free of the obstruction without considering the cost of alterations necessary to put them in a condition suitable for occupancy *Page 340 
was $9,000. The rental value of the premises as obstructed was nil.
The chancellor concluded that the maintenance by the city of the leased premises was an unlawful interference with the access to complainants' property, that it constituted special damages for which the complainants are entitled to recover, and that the measure of damages is the difference between the rental value of the premises in its obstructed condition and the rental value if it had been unobstructed.
It was decreed that the City of Philadelphia pay the complainants the sum of $9,000 with interest from February 7, 1934. The bill as to the respondent individuals was dismissed. The City of Philadelphia appealed.
In his adjudication the court below aptly said: "If the city had immediately after condemnation begun demolition and construction, we would be forced to conclude that deprivation of access for the period necessary to accomplish this would have been damnum absque injuria. On the contrary, however, immediately upon taking possession, the City . . . leased the property to individuals. It cannot be successfully argued that in so doing the City was acting in other than its proprietary capacity." The court correctly held that "the obstruction of a public highway is a public nuisance," that "the maintenance of a building within the bed of the street was such an obstruction," and that "when the City itself creates and maintains the nuisance which produces injury to a person or private property, it subjects itself to civil liability for its wrongful and unlawful act."
In Vanderslice v. Philadelphia, 103 Pa. 102, it was held that where damages resulted to a property owner because of the city's negligence, the former was entitled to damages. It was held in Malpass v. Philadelphia, 52 Pa. Super. 250, that where there was a failure on the part of the city to keep sewers in good condition the city was liable to respond in damages. In Reid Creamery Dairy Supply Co. v. Philadelphia,274 Pa. 251, *Page 341 118 A. 11, and Koch v. Williamsport, 195 Pa. 488, 46 A. 67, the same principle is reiterated.
We think that this case was correctly decided by the court below.
The decree is affirmed, at appellant's cost.