Kathleen KUHNS; Joyce Mazalewski; and Kathleen Teay, Plaintiffs

v.

CITY OF ALLENTOWN; Chief of Police Roger MacLean, both individually and in his official capacity; Allentown Women's Center, Inc.; and Jennifer Boulanger, Defendants.

Civil Action No. 08–cv–2606.

United States District Court, E.D. Pennsylvania.

March 31, 2009.

70, 70–some thousand a year, [so unemployment] wouldn't be a problem." (Sharon Dep. 21:8–9.)

Denis Brenan, Esquire, for Plaintiffs.

Thomas E. Zemaitis, Esquire, Elizabeth S. Campbell, Esquire, Susan Frietsche, Esquire, David S. Cohen, Esquire, for Defendants, Allentown Women's Center, Inc. and Jennifer Boulanger.

### OPINION

JAMES KNOLL GARDNER, District Judge.

This matter is before the court on the Motion to Dismiss of Defendants Allentown Women's Center and Jennifer Boulanger filed July 24, 2008.[1] Upon consideration of the briefs of the parties and for the reasons articulated in this Opinion, I grant in part and deny in part the motion to dismiss.

### SUMMARY OF DECISION

Specifically, I grant defendants' motion to dismiss Count II of plaintiffs' complaint for failure to state a claim upon which relief can be granted. I dismiss Count II, a claim pursuant to 42 U.S.C. § 1983 for deprivation of plaintiffs' rights to religious freedom and freedom of expression under the Pennsylvania Constitution because § 1983 provides a remedy for the violation of federal, not state, constitutional rights.

I also grant defendants' motion to dismiss Count III of plaintiffs' complaint, a claim pursuant to 42 U.S.C. § 1983 alleging violation of plaintiffs' federal right to equal protection of the law for violation of their freedom of speech under the First Amendment to the United States Constitution, and alleging violation of plaintiffs' state right to equal protection of the law for violating their freedom of expression under Article I, § 7 of the Pennsylvania Constitution. I dismiss the claims under the state Constitution for the same reasons I dismiss Count II. I dismiss the equal protection of the law claims under the federal Constitution as duplicative of plaintiffs' First Amendment claim in Count I.

I deny defendants' motion to dismiss Count I of the complaint because I find that plaintiffs have sufficiently pled claims

---

1. Accompanying defendants' motion was the Memorandum of Law in Support of Motion of Defendants Allentown Women's Center and Jennifer Boulanger to Dismiss the Complaint, which memorandum was also filed July 24, 2008.

On August 8, 2008 I entered an Order granting the Uncontested Motion of Plaintiffs for an Extension of Time in Which to Respond to the Fed.R.Civ.P. 12(b)(6) Motion to Dismiss by Defendants Allentown Women's Center and Jennifer Boulanger and extended plaintiffs' deadline to respond to the motion to dismiss until August 28, 2008.

On August 28, 2008 plaintiffs filed Plaintiffs' Brief in Opposition to Fed.R.Civ.P. 12(b)(6) Motion to Dismiss by Defendants Allentown Women's Center and Jennifer Boulanger. Co-defendants City of Allentown and Chief of Police Roger MacLean filed neither a motion to dismiss nor a response to, or joinder in, defendants Allentown Women's Center, Inc. and Jennifer Boulanger's motion to dismiss.

under § 1983 that defendants deprived plaintiffs of their federal rights under the First Amendment to freedom of speech and religion. I conclude that the right of free speech guarantees every citizen that he may reach the minds of willing listeners and to do so there must be opportunity to win their attention. In this case, plaintiffs have sufficiently alleged that defendants' efforts to drown out plaintiffs' religious anti-abortion message infringe upon plaintiffs' First Amendment rights.

Finally, I deny defendants' motion to dismiss Count IV of the complaint because I find that plaintiffs have sufficiently pled a pendent state law claim for public nuisance under Pennsylvania law. I conclude that Pennsylvania recognizes a private cause of action for public nuisance. I find plaintiffs' allegation that defendants have blocked pedestrian and motor vehicle traffic on a public street in Allentown, Pennsylvania, to be sufficient because obstruction of a public highway is a public nuisance. I also conclude that under Pennsylvania law, civil rights violations can be specific injuries sufficient to state claims for public nuisance.

## JURISDICTION

Jurisdiction in this case is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331. The court has supplemental jurisdiction over plaintiffs' pendent state law claims. *See* 28 U.S.C. § 1367.

## VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to plaintiffs' claims allegedly occurred in Allentown, Lehigh County, Pennsylvania, which is located within this judicial district.

## BACKGROUND

### Complaint

On June 4, 2008 plaintiffs Kathleen Kuhns, Joyce Mazalewski and Kathleen Teay filed a four-count Complaint for Injunctive Relief and Damages against the City of Allentown; Chief of Police Roger MacLean (both individually and in his official capacity); Allentown Women's Center, Inc.; and Jennifer Boulanger, the Center Executive Director.

In this federal civil rights action, three anti-abortion protesters claim that a private reproductive health care provider and its Executive Director violated the protesters' federal First Amendment and Equal Protection rights, as well as rights secured by the Pennsylvania Constitution and state law.

The complaint also names as defendants the City of Allentown and its Chief of Police. Plaintiffs allege that these municipal defendants acted jointly with the Women's Center and its Director to deprive plaintiffs of their rights, including their constitutional free speech, religious freedom and equal protection rights, and to create a public nuisance.

The complaint alleges that the defendants are permitting clinic escorts to accompany Women's Center patients through the crosswalk on Keats Street adjoining the Center, using three strategies to shield them from direct contact with the protesters.

Specifically the complaint alleges that the Women's Center (presumably through its employees, agents or volunteers), including Director Boulanger: (1) hold two six-foot by fifteen-foot opaque plastic tarps seven feet apart within the crosswalk, which separates patients from protesters and blocks Keats Street from the exit of the parking lot used by the Center to the entrance of the Center; (2) form a "human shield" around patients to prevent protesters from having access to them in a public place; and (3) shout to create "vocal noise"

for the purpose of drowning out the protesters' message.[2]

## Summary of Claims

Count I of the complaint is brought under 42 U.S.C. § 1983 and alleges violation of plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution. More specifically, Count I alleges that defendants City and Police Chief have acted jointly with defendants Center and its Director under color of state law to deprive plaintiffs of their rights under the First Amendment to freedom of speech and religion.

Count II is also brought under § 1983 and alleges violations under Article I, §§ 3 and 7 of the Pennsylvania Constitution. More specifically, Count II alleges that defendants City and Police Chief have acted jointly with defendants Center and its Director under color of state law to deprive plaintiffs of their rights to religious freedom under § 3 and to freedom of expression under § 7.

Count III is brought under § 1983 and alleges that defendants' conduct violates plaintiffs' rights to equal protection of the law under the Fourteenth Amendment to the United States Constitution and under the Pennsylvania Constitution and the state statutes prohibiting obstruction of roadways.

Finally, in Count IV plaintiffs allege a private action for public nuisance under Pennsylvania state law. More specifically, Count IV alleges that the defendants acting jointly under color of state law have engaged in conduct that unreasonably interferes with Constitutional and civil rights of plaintiffs which are common to the general public.

Plaintiffs allege that these deprivations of their rights have caused them mental suffering, emotional distress and other harm warranting compensatory damages.

In their Prayer for Relief plaintiffs seek compensatory damages; injunctive relief against Director Boulanger and the Allentown Women's Center, and its agents, servants and employees under Counts I–III, enjoining and restraining them from further interference with plaintiffs' rights, and under Count IV, enjoining and restraining them from continuing the conduct constituting a public nuisance; reasonable fees and costs pursuant to 42 U.S.C. § 1988 as to Counts I–III; and such other relief as the court deems just and proper.

## Previous Litigation

In ruling upon a motion to dismiss, the court may consider "any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Township School District*, 452 F.3d 256, 260 (3d Cir.2006).

This litigation follows two previous federal civil rights lawsuits by anti-abortion protesters against the City of Allentown and Allentown Police Department stemming from confrontational protests at and around the entrance to the Women's Center. *See Arietta v. City of Allentown*, civil action number 04–cv–00226, 2004 WL 1774623 (E.D.Pa.) ("*Arietta I*"); *Arietta v. City of Allentown*, civil action number 04–cv–05306, 2007 WL 2071671 (E.D.Pa.) ("*Arietta II*").

Two of the plaintiffs in the within case, Kathleen R. Kuhns and Kathleen Teay, were also plaintiffs in the previous litigation. Ms. Kuhns was a plaintiff in both *Arietta I* and *Arietta II*, and Ms. Teay was a plaintiff in *Arietta II*. The City of Allentown and officials of the Allentown Police Department were named as defendants in both previous cases.

---

2. Complaint at paragraph 24.

Both plaintiffs Kuhns and Teay signed a comprehensive settlement agreement, entitled "Consent Judgment", which this court entered as a final judgment in *Arietta II*.[3] This Consent Judgment created detailed rules governing the conduct of police and protesters at protests held at and around the entrance to the Women's Center.

Specifically, the Consent Judgment created a seven-foot-wide crosswalk spanning Keats Street. The crosswalk connects the Women's Center's parking lot and the entrance to the Center. In addition, the Consent Judgment created a painted walkway on Keats Street adjacent to the parking lot—a four-foot wide strip running the length of Keats Street across the street from the Women's Center, perpendicular to the seven-foot-wide crosswalk.

The Consent Judgment further provided:

2. The Plaintiffs' claims for injunctive relief are settled on the following terms:

h. Plaintiffs may stand or walk along the walkway within the crosswalk past the parking lot gate in either direction during their pro-life advocacy. However, if a patient, staffer, volunteer, or other person affiliated with Allentown Women's Center elects to enter and use the crosswalk and is in the process of going to or from AWC, any Plaintiff present shall withdraw from the crosswalk until said person(s) have entered AWC or the parking lot, as the case may be.

i. When AWC-related persons are using the crosswalk, Plaintiffs may walk back and forth across Keats Street on either or both sides of the crosswalk, to engage in pro-life advocacy, until the AWC-related persons have entered AWC or the parking lot, as the case may be. Non-consensual physical contact is prohibited between Plaintiffs and clinic employees, patients or visitors.[4]

In brief, under the terms of the Consent Judgment, protesters may not be in the crosswalk when Women's Center patients, staff or volunteers are in it.[5]

Neither the Women's Center nor Jennifer Boulanger was a party to *Arietta I* or *Arietta II*. In fact, the Women's Center attempted, unsuccessfully, to intervene in *Arietta II* upon learning the broad outlines of the Consent Judgment. The City of Allentown and the Allentown police opposed the Women's Center Motion to Intervene, as did the plaintiff-protesters. Following briefing and argument I denied the Women's Center's Motion to Intervene and dismissed the Allentown Women Center's Complaint in Intervention.[6]

My Opinion denying the Motion to Intervene stated that "[t]he existing parties' settlement agreement does not bind the Women's Center in any way with respect

---

**3.** Complaint at paragraphs 25, 29, 30 and 31. *See* Exhibit A to City of Allentown's Answer and Affirmative Defenses filed July 23, 2008 (Document 23). *See also* Consent Judgment filed June 12, 2007 (Document 231–2) in case number 04–cv–05306–JKG (*Arietta II*). *See also* my July 12, 2007 Order in *Arietta II* approving and adopting the parties' Consent Judgment as the final Judgment and Order of this court (Document 236).

**4.** Consent Judgment at paragraph 2 h.-i.

**5.** Complaint at paragraph 29.

**6.** See my Order and Opinion dated and filed July 12, 2007 in case number 04–cv–05306 (Document 235–2) denying the Motion to Intervene on the grounds that it was untimely, prejudicial to the existing parties, would cause undue delay, and lacked legal and factual commonalities with the underlying dispute. I also noted that the Women's Center could achieve the same result it sought through intervention (the protection of its purported interests) by initiating a new, separate civil action. *See also* complaint at paragraph 31.

to possible future FACE Act [7] or Fourteenth Amendment litigation. The Center is a non party and will not be bound by res judicata principles." [8]

In addition, my Opinion stated that the *Arietta II* settlement agreement "does not compel employees, patients or visitors of the Allentown Women's Center to utilize the designated crosswalk. Those affiliated with the Women's Center are free to seek passage across Keats Street in either direction in any manner they choose." [9]

### STANDARD OF REVIEW

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." A 12(b)(6) motion requires the court to examine the sufficiency of the complaint. *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957) (abrogated in other respects by *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Ordinarily, a court's review of a motion to dismiss is limited to the contents of the complaint, including any attached exhibits. *See Kulwicki v. Dawson,* 969 F.2d 1454, 1462 (3d Cir.1992). However, evidence beyond a complaint which the court may consider in deciding a 12(b)(6) motion to dismiss includes public records (including court files, orders, records and letters of official actions or decisions of government agencies and administrative bodies), documents essential to plaintiff's claim which are attached to defendant's motion, and items appearing in the record of the case. *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 nn. 1–2 (3d Cir. 1994).

Except as provided in Federal Rule of Civil Procedure 9, a complaint is sufficient if it complies with Rule 8(a)(2). That rule requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1964, 167 L.Ed.2d at 940.

■ Additionally, in determining the sufficiency of a complaint, the court must accept as true all well-pled factual allegations and draw all reasonable inferences therefrom in the light most favorable to the non-moving party. *Worldcom, Inc. v. Graphnet, Inc.,* 343 F.3d 651, 653 (3d Cir. 2003). Nevertheless, a court need not credit "bald assertions" or "legal conclusions" when deciding a motion to dismiss. *In re Burlington Coat Factory Securities Litigation,* 114 F.3d 1410, 1429–1430 (3d Cir.1997).

In considering whether the complaint survives a motion to dismiss, both the District Court and the Court of Appeals review whether it "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly,* 550 U.S. at 562, 127 S.Ct. at 1969, 167 L.Ed.2d at 945 (quoting *Car Carriers, Inc. v. Ford Motor Company,* 745 F.2d 1101, 1106 (7th Cir.1984)) (emphasis in original); *Haspel v. State Farm Mutual Auto. Insurance Company,* 241 Fed.Appx. 837, 839 (3d Cir.2007).

### FACTS

Plaintiffs specifically allege the following facts in their complaint, which under the foregoing standard of review, I must accept as true for the purposes of the motion to dismiss.

---

7. Freedom of Access to Clinic Entrance Act ("FACE"), 18 U.S.C. § 248 (footnote 7 added, not in Opinion).

8. See my July 12, 2007 Opinion at pages 15, 2007 WL 2071671, at *18 and 44.

9. July 12, 2007 Opinion at page 47, 2007 WL 2071671, at *19.

Plaintiffs are pro-life advocates who express their views outside the Allentown Women's Center, located on Keats Street in Allentown, Pennsylvania.[10] Through their actions, speech, and literature, plaintiffs' counsel and inform pregnant women and their companions in an attempt to persuade them not to abort their pregnancies, in keeping with plaintiffs' religious convictions that abortion is the taking of innocent life and contrary to God's law.[11]

Defendants City of Allentown and Allentown Chief of Police Roger MacLean have authorized the Allentown Women's Center and its Executive Director, Jennifer Boulanger, to block Keats Street despite plaintiffs' complaints to the city.[12]

To prevent plaintiffs from exercising their rights, persons acting on behalf of defendant Women's Center, including defendant Jennifer Boulanger, hold opaque tarps across Keats Street between the Women's Center entrance and an adjacent parking lot, employ people to form human shields around pregnant women as they cross Keats Street, and shout to drown out the protesters.[13]

Agents of co-defendant City of Allentown, including codefendant Chief of Police Roger MacLean, permit the Women's Center and Jennifer Boulanger to engage in this conduct. In addition, they issued numerous groundless criminal charges against plaintiffs, and allowed Allentown Women's Center patients to threaten and physically attack pro-life advocates.[14]

Finally, agents of the Women's Center, including Jennifer Boulanger have conspired with agents of defendant City, including Chief MacLean, to deprive plaintiffs of their constitutional and civil rights.[15]

## CONTENTIONS OF THE PARTIES

### Federal Constitutional Claims

#### Defense Contentions

Defendant Women's Center and defendant Executive Director contend that plaintiffs' Constitutional claims fail for two reasons. First, under the governing standard of *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) the complaint does not sufficiently allege that either defendant is a state actor. Second, even if the Women's Center and Jennifer Boulanger were state actors, the complaint does not make out any Constitutional violation.[16]

Defendants contend that nothing which the complaint states that the Women's Center or director Boulanger have allegedly done has restricted the protesters' ability to speak or exercise their religion. Instead, the complaint merely alleges that the Women's Center and Ms. Boulanger have limited their own patients' exposure to the protesters' unrestricted speech.[17]

Defendants contend that the right to free speech does not extend to the right to command the attention of unwilling listeners. Relying on *Rowan v. U.S. Post Office Department*, 397 U.S. 728, 737, 90 S.Ct. 1484, 1490, 25 L.Ed.2d 736, 743 (1970) ("Nothing in the Constitution compels us

10. Complaint at paragraphs 15 and 19.

11. Complaint at paragraphs 19 and 21.

12. Complaint at paragraphs 8, 17, and 23.

13. Complaint at paragraph 24.

14. Complaint at paragraphs 27 and 35.

15. Complaint at paragraphs 22, 24, and 36.

16. Memorandum of Law in Support of Motion of Defendants Allentown Women's Center and Jennifer Boulanger to Dismiss the Complaint, which memorandum was filed July 24, 2008 (Document 25) ("Defense Memorandum") at page 5.

17. *Id.*

to listen to any unwanted communication, whatever its merit.") and *Hill v. Colorado*, 530 U.S. 703, 716, 120 S.Ct. 2480, 2489, 147 L.Ed.2d 597, 612 (2000), defendants assert that there is simply no Constitutional right to force others to listen to even good ideas.[18]

### Plaintiffs' Contentions

Plaintiffs contend that defendants are attacking their complaint on the basis of a forbidden "heightened" pleading or "fact-pleading" standard. Plaintiffs state that in *Alston v. Parker*, 363 F.3d 229, 233 n. 6 (3d Cir.2004) the United States Court of Appeals for the Third Circuit officially pronounced the death of its own judicially-created "heightened pleading requirement" in § 1983 cases when it proclaimed that "a heightened pleading requirement for civil rights complaints no longer retains vitality under the Federal Rules." [19]

Plaintiffs assert that under the Consent Judgment, the City agreed that the *Arietta II* plaintiffs are not only free to engage in pro-life advocacy in the agreed painted walkway, but are also free to walk on either side of the crosswalk to engage in pro-life advocacy as Women's Center-related persons enter the Center or the parking lot.[20] Plaintiffs contend that that provision has been frustrated by the joint action of the defendants, as the complaint alleges.[21]

Plaintiffs assert their complaint sufficiently alleges that the Women's Center and Jennifer Boulanger have reached an understanding and have acted in concert with defendants City and Police Chief MacLean to deprive plaintiffs of their civil and Constitutional rights in circumvention of the settlement and Consent Judgment, and have acted in concert to deprive plaintiffs of their rights under the First Amendment.[22]

Plaintiffs cite *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 152, 158, 90 S.Ct. 1598, 1605, 1609, 26 L.Ed.2d 142, 151, 155 (1970) for the proposition that a plaintiff can maintain an action against a private party who has "somehow reached an understanding" with a public official to deny the plaintiff his or her Constitutional rights.[23]

Plaintiffs state that to act under "color of law" does not require that the accused be an officer of the state. It is enough that he is a willful participant in joint activity with the state or its agent.[24] Plaintiffs argue that a private party engaging in challenged activity is subject to suit under § 1983 when "there is a sufficiently close nexus between the State and the challenged action . . . ." [25]

Finally, plaintiffs contend that a public sidewalk and street, as my former colleague Senior Judge James McGirr Kelly held in *Arietta I*, is a "quintessential public forum[ ]" in which "the rights of the State to limit expressive activity are sharply circumscribed." [26] Plaintiffs argue that there

---

18. Defense Memorandum at 15.

19. Plaintiffs' Brief at 1, 12.

20. Consent Judgment at paragraph 2.i.; Plaintiffs' Brief at 3.

21. Plaintiffs' Brief at 3–4.

22. Complaint at paragraph 38; Plaintiffs' Brief at 5, 6.

23. Plaintiffs' Brief at 6–7.

24. Plaintiffs' Brief at 7–8.

25. *Jackson v. Metropolitan Edison Company*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477, 484 (1974); Plaintiffs' Brief at 9.

26. See Opinion of former Senior Judge James McGirr Kelly in *Arietta I*, 2004 WL 1774623, *11 (E.D.Pa. August 9, 2004); *Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37, 45, 103 S.Ct. 948, 954, 74 L.Ed.2d 794, 804 (1983); Plaintiffs' Brief at 19.

can be no compelling state interest in blocking off a public crosswalk and converting it into a private corridor for the patrons of a particular business.[27]

### Equal Protection Clause

#### Defense Contentions

Defendants contend that Count III of the complaint fails to state a claim that the Women's Center and Jennifer Boulanger violated plaintiffs' rights under the Equal Protection Clause. Defendants argue that the protesters have not alleged that they have suffered discrimination on the basis of race, sex, or any other protected class that would receive heightened scrutiny under the Equal Protection Clause.[28]

Defendants claim that Count III of the complaint describes nothing other than ordinary discretionary government action unrelated to any government class.[29] Defendants cite the Sixth Circuit Court of Appeals for the proposition that a plaintiff claiming that "he was treated one way and everyone else another . . . has never been thought to raise an equal protection claim." *Charles v. Baesler*, 910 F.2d 1349, 1357 (6th Cir.1990). Defendants argue that if it were otherwise, police would be liable for not enforcing the law against anyone who has ever violated it.[30]

#### Plaintiffs' Contentions

Plaintiffs contend that their complaint states a claim for violation of the Equal Protection Clause by discriminatory law enforcement.[31] Plaintiffs rely on *Holder v. City of Allentown*, 987 F.2d 188, 197 (3d Cir.1993) for the assertion that "it has long been established that discriminatory enforcement of a statute or law by state and local officials is unconstitutional."[32]

Plaintiffs assert that the complaint plainly pleads that the City, allied with the private defendants, has a history of repeatedly charging pro-life advocates with the criminal offense of "obstruction of roadways" in prosecutions that all failed, yet now authorizes true and actual obstruction of the same roadway by Women's Center personnel, ignoring protests from plaintiff's counsel, which discriminatory law enforcement violates the Equal Protection Clause.[33] Specifically, plaintiffs allege that Allentown Women's Center personnel are using tarps, their bodies and a wall of noise to block Keats Street in a manner the City would prosecute instantaneously if plaintiffs did it.[34]

Finally, plaintiffs contend that the fact that plaintiffs are not a protected class is irrelevant because discriminatory law enforcement based on "some other arbitrary factor . . . or to prevent the exercise of a fundamental right," is still forbidden. *Holder*, 987 F.2d at 197.[35]

### State Constitutional Claims

#### Defense Contentions

Defendants contend that the protesters fail to state cognizable state Constitutional claims. Defendants argue that for many of the same reasons that their federal Constitutional claims fail, then state Constitutional claims also must be dismissed. First, the protesters have not adequately pled joint action or conspiracy as § 1983 requires. Hence, the Women's Center and

---

**27.** Plaintiffs' Brief at 20.

**28.** Defense Memorandum at 17, 18.

**29.** Defense memorandum at 18.

**30.** Defense Memorandum at 19–20.

**31.** Plaintiffs' Brief at 21–23.

**32.** Plaintiffs' Brief at 21.

**33.** Complaint at paragraphs 27, 34, 43–44; Plaintiffs' Brief at 21.

**34.** Complaint at paragraphs 24(a) and (b), 27, 32–34; Plaintiffs' Brief at 22.

**35.** Plaintiffs' Brief at 22.

Director Boulanger should not be subject to suit as state actors.

And second, as with their federal Constitutional claims, plaintiffs have not pled any facts indicating that the Women's Center and Jennifer Boulanger have interfered with their right to religious freedom and freedom of expression found in Article I, §§ 3 and 7, respectively, of the Pennsylvania Constitution.[36]

### Plaintiffs' Contentions

Plaintiffs contend that their complaint plainly states claims under the Pennsylvania Constitution. They argue that the complaint's free speech claims are well-pleaded, including those in Count II under the Pennsylvania Constitution, which is even more protective of freedom of speech than the United States Constitution. For this proposition plaintiffs cite *Bodack v. Law Enforcement Alliance of America, Inc.*, 567 Pa. 606, 609, 790 A.2d 277, 278 (2001), which observes that "Article I, § 7 [of the Pennsylvania Constitution] affords greater protection to speech and conduct than ... the First Amendment [to the United States Constitution]." [37]

Plaintiffs also assert that defendants' argument that Count II of the complaint does not adequately plead joint action or conspiracy, ignores the plain language of the count and the entire factual content of the pleading.[38]

### *Plaintiffs' State Claim for Public Nuisance*

### Defense Contentions

Defendants contend that plaintiffs' action for public nuisance should be dismissed as a matter of law. Citing *Duquesne Light Company v. Pennsylvania*

*American Water Company*, 850 A.2d 701, 704 (Pa.Super.2004) and *Ricchiuti v. Home Depot, Inc.*, 412 F.Supp.2d 456, 459 (E.D.Pa.2005) plaintiffs assert that Pennsylvania has never recognized a private cause of action for public nuisance.[39]

Defendants argue in the alternative that even if Pennsylvania were to recognize such a private right of action, plaintiffs have not stated a public nuisance claim in their complaint. Defendants state that in order to allege public nuisance, the plaintiffs must show "an unreasonable interference with a right common to the general public." *Machipongo Land and Coal Company v. Department of Environmental Protection*, 569 Pa. 3, 799 A.2d 751, 773 (2002).[40]

Defendants assert that a public nuisance must "affect the community at large and not merely the complaining parties." *Karpiak v. Russo*, 450 Pa.Super. 471, 676 A.2d 270, 275 (1996).[41] Citing *Ricchiuti*, 412 F.Supp.2d at 460, defendants state that traditionally courts have held that "public nuisance is pollution of the air or a river, an obstruction of a highway, etc. These nuisances affect the community as a whole by potentially affecting every individual's health or enjoyment of public property." [42]

Finally, defendants argue that not only have the protesters failed to plead any of these required elements of a public nuisance claim, but a fair reading of the complaint suggests that the protesters are suing to gain "access" to the patients who are seeking Women's Center services. However, access to the clinic's patients is

---

36. Defense Memorandum at 20.

37. Plaintiffs' Brief at 23.

38. *Id.*

39. Defense Memorandum at 21.

40. *Id.*

41. Defense Memorandum at 21–22.

42. Defense Memorandum at 21.

not a public right, and denial of access to these women is not a public nuisance.[43]

### Plaintiffs' Contentions

Plaintiffs contend that Pennsylvania law permits private parties to sue to enjoin a public nuisance from which they have suffered special harm. Plaintiffs assert that the Supreme Court of Pennsylvania has held that "a public nuisance may be enjoined at the behest of a private citizen or group of citizens, if the latter, either in their property or civil rights, are specifically injured by the public nuisance over and above the injury suffered by the public generally." *Pennsylvania Society for Prevention of Cruelty to Animals v. Bravo Enterprises, Inc.,* 428 Pa. 350, 360, 237 A.2d 342, 348 (1968).[44]

Plaintiffs state that a public nuisance is indeed an "unreasonable interference with a right common to the general public." *Saint Thomas Township Board of Supervisors v. Wycko,* 758 A.2d 755, 759 (Pa. Commw.2000). Plaintiffs argue that clearly, obstruction of a highway would constitute a public nuisance, as defendants themselves admit in citing *Ricchiuti* for the proposition that a "public nuisance is ... obstruction of a highway, etc." 412 F.Supp.2d at 460. And there is indeed a right common to the general public to unobstructed use—for all legitimate purposes, including speech—of a public street. *Perry Education Association,* 460 U.S. at 45, 103 S.Ct. at 954–955, 74 L.Ed.2d at 804.

### DISCUSSION

#### Section 1983

■ Plaintiffs' constitutional claims are actionable against defendants through 42 U.S.C. § 1983. Section 1983 is an enabling statute that does not create any substantive rights, but provides a remedy for the violation of federal constitutional or statutory rights. *Gruenke v. Seip,* 225 F.3d 290, 298 (3d Cir.2000). Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

■ Thus, to state a claim under § 1983, a plaintiff must allege that defendant, acting under color of state law, deprived plaintiff of a federal constitutional or statutory right. *Chainey v. Street,* 523 F.3d 200, 219 (3d Cir.2008) (quoting *Kaucher v. County of Bucks,* 455 F.3d 418, 423 (3d Cir.2006)).

#### Color of State Law

■ A defendant acts under color of state law when he exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40, 49 (1988); *Bonenberger v. Plymouth Township,* 132 F.3d 20, 23 (3d Cir.1997).

"[I]t is settled that otherwise private acts are performed under color of state law for purposes of 42 U.S.C. § 1983, when they are part of a conspiracy with state officials." *Goadby v. PECO,* 639 F.2d 117, 120 n. 2 (3d Cir.1981). The Third Circuit has explained that a

---

**43.** Defense Memorandum at 22.

**44.** Plaintiffs' Brief at 23.

defendant acts under color of state law if there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself. A plaintiff may show such a nexus by establishing that the state and a private actor conspired with one another to violate an individual's rights.

*Adams v. Teamsters Local 115*, 214 Fed. Appx. 167, 172 (3d Cir.2007) (internal punctuation omitted).

■ Thus, a private party defendant, whether an entity or individual, may be deemed to be a state actor for the purpose of § 1983 liability where the private party conspires with a government official. *Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir.1995); *M & M Stone Co. v. Pennsylvania*, 2008 WL 4467176, *20, 2008 U.S.Dist. LEXIS 76050, *64 (E.D.Pa.2008)(Gardner, J.).

Although there is no heightened pleading requirement for § 1983 actions, *Thomas v. Independence Township*, 463 F.3d 285, 295 (3d Cir.2006), a plaintiff alleging a § 1983 conspiracy

> must plead with particularity the "circumstances" of the alleged wrongdoing

in order to place the defendants on notice of the precise misconduct with which they are charged. Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose, will be deemed sufficient. . . . [A]n inference [of conspiracy] . . . from the Complaint . . . [is] no substitute for the requirement that the circumstances of the conspiracy be pleaded with specificity.

*M & M Stone Co.*, 2008 WL 4467176 at *20, 2008 U.S.Dist. LEXIS at *64–65 (quoting *Loftus v. SEPTA*, 843 F.Supp. 981, 986–987 (E.D.Pa.1994)(Robreno, J.)).[45]

■ Plaintiffs' allegations satisfy the pleading requirements for a § 1983 conspiracy with regard to plaintiffs' constitutional claims. Plaintiffs allege that the conspiracy spans "[b]efore, during and after the first civil rights action," "[d]uring the pendency of the second civil rights action," and "[n]ot long after the consent judgment was entered" in the second civil rights action.[46] Plaintiffs allege that the object of the conspiracy is to "deprive

---

**45.** *See Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir.1989); *Panayotides v. Rabenold*, 35 F.Supp.2d 411, 419 (E.D.Pa.1999) (Joyner, J.), *aff'd*, 210 F.3d 358 (3d Cir.2000).

**46.** Complaint at paragraphs 27, 28, and 32.

As discussed above, the court may consider public records, documents essential to plaintiff's claim which are attached to defendant's motion, and items appearing in the record of the case in deciding a 12(b)(6) motion to dismiss. *Oshiver*, 38 F.3d at 1384 nn. 1–2. The docket entries of the previous civil rights actions. *Arietta v. City of Allentown* (*"Arietta I "*), 04–cv–226, and *Arietta v. City of Allentown* (*"Arietta II "*), 04–CV–5306, are public records; therefore, I may consider them in deciding whether to grant defendants' motion to dismiss.

Accordingly, I note that *Arietta I* commenced with the filing of plaintiffs' Complaint

on January 20, 2004, and was closed on August 9, 2004. (The last activity in *Arietta I* was an Order granting plaintiffs' motion for counsel fees and costs on September 29, 2006.) *Arietta II* commenced with the filing of plaintiffs' Complaint on November 15, 2004, and was closed on July 12, 2007 with the court's approval of the parties' consent judgment. (The last activity in *Arietta II* was an Order keeping the case closed, dated October 19, 2007.)

These dates give greater specificity to plaintiffs' allegation that the conspiracy spans "[b]efore, during and after the first civil rights action," "[d]uring the pendency of the second civil rights action," and "[n]ot long after the consent judgment was entered" in the second civil rights action. After considering these public record materials, it is even more clear that plaintiffs have sufficiently alleged the period of the conspiracy.

plaintiffs of their civil and constitutional rights."[47]

Plaintiffs allege multiple actions taken by the alleged conspirators to achieve the purpose of the conspiracy, including holding tarps "seven feet apart and across Keats Street from the exit of the parking lot used by [Allentown Women's Center ("AWC")] to the entrance of AWC," employing people "to form a human shield or scrum around the expectant mothers as they walk across Keats Street," shouting and creating "vocal noise" to drown out the protesters, issuing "numerous groundless criminal charges, at the behest of AWC," and contacting the Allentown Women's Center before contacting plaintiffs in response to plaintiffs' complaints of criminal conduct against them.[48]

Therefore, plaintiffs have sufficiently alleged the period of the conspiracy, the object of the conspiracy, and actions of the alleged conspirators taken to achieve the purpose of the conspiracy.

Thus, plaintiffs have sufficiently pled that the private actor defendants acted under color of state law, satisfying the first prong of the test for § 1983 liability.

I now turn to the second prong, and assess whether plaintiffs have sufficiently alleged that defendants deprived them of a federal constitutional or statutory right as alleged by plaintiffs in Count I of their complaint.

*Federal Constitutional Claims*

In Count I of the complaint, brought pursuant to 42 U.S.C. § 1983, plaintiffs allege that defendants City and Police Chief have acted jointly with defendants Women's Center and its Executive Director under color of state law to deprive plaintiffs of their rights to freedom of speech and religion under the First Amendment to the United States Constitution.

Plaintiffs assert that defendants conspired to prevent plaintiffs from using Keats Street for the exercise of their First Amendment rights.[49] Defendants argue that they have not "restricted the protesters' ability to speak or exercise their religion."[50] However, plaintiffs have alleged facts sufficient to withstand a motion to dismiss their First Amendment claim.

■ Plaintiffs allege that defendants held tarps "seven feet apart and across Keats Street from the exit of the parking lot used by AWC to the entrance of AWC" and employed people "to form a human shield or scrum around the expectant mothers as they walk across Keats Street."[51] Plaintiffs argue that defendants' tarps are used to "turn the crosswalk into an enclosed, effectively private corridor."[52] Viewing the facts in the light most favorable to plaintiffs, it can reasonably be inferred that defendants' tarps and human shield prevent pregnant women at the Allentown Women's Center from being able to see plaintiffs' actions and literature.

Plaintiffs also allege that defendants shouted and created "vocal noise" to drown out the protesters' voices.[53] Defendants

---

47. Complaint at paragraph 36.

48. Complaint at paragraphs 24, 27, and 35.

49. Complaint at paragraph 28.

50. Memorandum of Law in Support of Motion of Defendants Allentown Women's Center and Jennifer Boulanger to Dismiss the Complaint ("Defendants' Brief") at 13.

51. Complaint at paragraph 24.

52. Plaintiffs' Brief in Opposition to Fed. R.Civ.P. 12(b)(6) Motion to Dismiss by Defendants Allentown Women's Center and Jennifer Boulanger, which brief was filed August 28, 2008 (Document 33) ("Plaintiffs' Brief") at 25.

53. Complaint at paragraph 24.

argue that they are merely "limit[ing] their own patients' exposure to protesters' unrestricted speech," but defendants do not have the right to drown out plaintiffs' free speech.[54]

"The right of free speech is guaranteed every citizen that he may reach the minds of willing listeners and to do so there must be opportunity to win their attention." *Kovacs v. Cooper*, 336 U.S. 77, 87, 69 S.Ct. 448, 454, 93 L.Ed. 513, 522 (1949); *see Hill v. Colorado*, 530 U.S. 703, 728, 120 S.Ct. 2480, 2495, 147 L.Ed.2d 597, 619 (2000). "The right of free speech does not embrace a right to snuff out the free speech of others." *Startzell v. City of Philadelphia*, 533 F.3d 183, 197 (3d Cir.2008) (internal punctuation omitted).

Thus, plaintiffs have sufficiently alleged that defendants' efforts to drown out plaintiffs' speech infringe upon plaintiffs' First Amendment rights. *Startzell*, 533 F.3d at 198–199; *Adams*, 214 Fed.Appx. at 176 (Oberdorfer, J., concurring).

In *Startzell*, the district court denied defendants' motion to dismiss under facts similar to those presented here. The *Startzell* plaintiffs alleged a § 1983 conspiracy to violate plaintiffs' First Amendment rights, alleging that "[a]s soon as Plaintiffs attempted to speak and raise their signs ... [defendants] surrounded Plaintiffs and began to blow whistles and shout at them. Eventually, [defendants] held up a wall of pink styrofoam boards to prevent others from hearing Plaintiffs' religious message." *Startzell v. City of Philadelphia*, 2006 WL 1479809, *1, 2006 U.S.Dist. LEXIS 34128, *4 (E.D.Pa.2006) (Stengel, J.).

Plaintiffs have sufficiently alleged that defendants restricted their exercise of free speech. I now consider whether the restrictions placed on plaintiffs' speech are constitutionally permissible.

### Impermissible Restrictions on Speech

Plaintiffs protested on Keats Street. Streets and sidewalks are "an undisputed quintessential public forum." *Startzell,* 533 F.3d at 196. "Absent a compelling interest, speech in a public forum may not be regulated based upon content." *Eichenlaub v. Township of Indiana,* 385 F.3d 274, 280 (3d Cir.2004).

■ Furthermore, in a public forum, time, place, and manner restrictions must be "justified without reference to the content of the regulated speech, ... narrowly tailored to serve a significant governmental interest, and ... leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661, 675 (1989); *Startzell,* 533 F.3d at 197.

■ If a statute is content-based, defendants must show that the regulation is necessary to serve a compelling interest and is narrowly tailored to achieve that end. *Perry Education Association v. Perry Local Educators' Association,* 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794, 804 (1983); *Northampton County Democratic Party v. Hanover Township,* 2004 WL 887386, *9, 2004 U.S.Dist. LEXIS 7755, *27 (E.D.Pa.2004)(Gardner, J.).

■ Plaintiffs allege that defendants' actions are "for the purpose of blocking the anti-abortion communications of the plaintiffs."[55] Accordingly, plaintiffs argue that defendants' actions constitute a content-based restriction on speech.[56] Defendants do not argue that such a compelling interest exists in this case. Instead, de-

---

**54.** Defense Memorandum at 13.

**55.** Complaint at paragraph 24.

**56.** Plaintiffs' Brief at 21.

fendants appear to argue only that they have not "substantially burdened" plaintiffs' speech.[57]

As discussed above, plaintiffs have sufficiently alleged that defendants' actions have burdened plaintiffs' speech; accordingly, plaintiffs have sufficiently pled that defendants' actions constitute an impermissible content-based restriction on plaintiffs' speech.

Moreover, plaintiffs have alleged facts sufficient to withstand a motion to dismiss even if defendants' speech regulations are content neutral. Time, place, and manner restrictions in a public forum must "leave open ample alternative channels for communication of the information." *Ward*, 491 U.S. at 791, 109 S.Ct. at 2753, 105 L.Ed.2d at 675.

"An alternative is not ample if the speaker is not permitted to reach the 'intended audience.'" *Startzell*, 533 F.3d at 202 (quoting *Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1229 (9th Cir.1990)). Plaintiffs allege that their intended audience is the pregnant women at the Allentown Women's Center—not merely the public, or pregnant women in general.[58]

In *Startzell*, the Third Circuit recognized that plaintiffs' "intended audience was the LGBT OutFest attendees, whom they wanted to instruct about what they believed were the sins of homosexuality." *Startzell*, 533 F.3d at 202. Similarly, plaintiffs here allege that they talk to "expectant mothers and their companions *at AWC* in an attempt to persuade them not to abort their unborn children."[59] Although the Third Circuit affirmed the district court's grant of summary judgment to defendants in *Startzell*, plaintiffs' contentions here are sufficient to survive a mo-

tion to dismiss because plaintiffs' alternative channels for communication would not reach their intended audience and are therefore not ample.

### Pennsylvania Constitutional Claims

In Count II of the complaint, brought pursuant to 42 U.S.C. § 1983, plaintiffs allege that defendants City and Police Chief have acted jointly with defendants Women's Center and its Executive Director under color of state law to deprive plaintiffs of their rights to religious freedom under Article I, § 3, and to freedom of expression under Article I, § 7, of the Pennsylvania Constitution.

■ Plaintiffs' § 1983 claim for deprivation of rights to religious freedom and freedom of expression under the Pennsylvania Constitution must be dismissed, however. Section 1983 only provides a remedy for deprivation of rights established or secured under the constitution or laws of the United States. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 811, 127 L.Ed.2d 114, 122 (1994); *Lugar v. Edmondson Oil Company*, 457 U.S. 922, 924, 102 S.Ct. 2744, 2747, 73 L.Ed.2d 482, 487 (1982); *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2695 n. 3, 61 L.Ed.2d 433, 442 n. 3 (1979).

■ Thus, to state a claim under § 1983, a plaintiff must allege a deprivation of a "federal constitutional or statutory right by a state actor." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir.2005); *Benn v. Universal Health System, Inc.*, 371 F.3d 165, 174 (3d Cir.2004) (quoting *Brown v. Grabowski*, 922 F.2d 1097, 1113 (3d Cir.1990); *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir.2000)).

---

**57.** Defense Memorandum at 16.

**58.** Complaint at paragraphs 19 and 20.

**59.** Complaint at paragraph 19 (emphasis added).

■ Allegations of state law or state constitutional violations will not support a § 1983 claim. *Laney v. Farley,* 501 F.3d 577, 580 n. 2 (6th Cir.2007); *Flynn v. Sandahl,* 58 F.3d 283, 290 (7th Cir.1995); *Malek v. Haun,* 26 F.3d 1013, 1016 (10th Cir.1994).

More specifically, to the extent that plaintiff's § 1983 claim is based on alleged violations of the *Pennsylvania* Constitution, that claim must be dismissed. *Laudadio v. Southeastern Pennsylvania Youth Lacrosse Association,* 2008 WL 1820942, *2, 2008 U.S.Dist. LEXIS 33224, *4 (E.D.Pa. April 23, 2008) (O'Neill, S.J.); *Boria v. Bowers,* 2007 WL 2726338, *3, 2007 U.S.Dist. LEXIS 68794, *9 (E.D.Pa. September 17, 2007) (Stengel, J.); *Carmiolo v. State Farm Fire and Casualty Company,* 2002 U.S.Dist. LEXIS 25708, *21 (E.D.Pa. February 1, 2002) (Bartle, J.); *Toll Brothers, Inc. v. The Township of Charlestown, Chester County,* 2001 WL 34368761, *1, 2001 U.S.Dist. LEXIS 24225, *2 (E.D.Pa. November 29, 2001) (Surrick, J.).

As the Third Circuit has made clear:

The plain language of section 1983, interpreted and underscored by the Supreme Court in *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), solely supports causes of action based upon violations, under the color of state law, of federal statutory law or constitutional rights. Section 1983 does

not provide a cause of action for violations of state statutes.

*Benn, supra,* 371 F.3d at 174.

■ Thus, plaintiffs' § 1983 claim for deprivation of rights under the Pennsylvania Constitution fails to state a claim upon which relief can be granted and is dismissed.[60]

### Equal Protection

In Count III of the complaint, also brought pursuant to 42 U.S.C. § 1983, plaintiffs allege that defendants' conduct violates plaintiffs' rights to equal protection of the law under the Fourteenth Amendment to the United States Constitution and under Article I, §§ 3 and 7 of the Pennsylvania Constitution and the state statutes prohibiting obstruction of roadways.

■ Plaintiffs argue that defendants' "discriminatory law enforcement [is] aimed at punishing the exercise of First Amendment rights."[61] Discriminatory enforcement of a facially valid law violates the Equal Protection Clause. *Hill v. City of Scranton,* 411 F.3d 118, 125 (3d Cir.2005); *Holder v. City of Allentown,* 987 F.2d 188, 197 (3d Cir.1993). "Public officials engage in unconstitutional discriminatory application or administration of a facially impartial law ... when they seek to enforce the law in order 'to prevent the exercise of a fundamental right.'" *Holder,* 987 F.2d at 197.

---

**60.** In their motion to dismiss, defendants argue that plaintiffs' § 1983 claims for violations of rights guaranteed by the Pennsylvania Constitution should be dismissed because plaintiffs failed to plead both a § 1983 conspiracy and interference with plaintiffs' constitutional rights. Defendants' Brief at 20. Defendants did not argue that § 1983 does not provide relief for violation of rights guaranteed by state law.

However, district courts may dismiss claims that do not state causes of action sua

sponte. *Bintliff–Ritchie v. American Reinsurance Company,* 285 Fed.Appx. 940, 943 (3d Cir.2008); *Bryson v. Brand Insulations, Inc.,* 621 F.2d 556, 559 (3d Cir.1980). Accordingly, I dismiss plaintiffs' claims for relief under § 1983 for violation of rights guaranteed by the Pennsylvania Constitution for failure to state a claim upon which relief can be granted.

**61.** Plaintiffs' Brief at 22.

Here, plaintiffs bring claims under both the First Amendment, discussed above, and the Equal Protection Clause for violations of their free speech rights. Plaintiffs' "First Amendment and Equal Protection claims are functionally identical and it would be redundant to treat them separately." *Hill,* 411 F.3d at 125–126; *see Stockham Interests, LLC v. Borough of Morrisville,* 2008 WL 4889023, *8, 2008 U.S.Dist. LEXIS 93152, *22 (E.D.Pa.2008) (Schiller, J.); *Harris v. Township of O'Hara,* 2006 WL 3231876, *5, 2006 U.S.Dist LEXIS 81480, *17 (W.D.Pa.2006), *aff'd,* 282 Fed.Appx. 172 (3d Cir.2008).

If plaintiffs' First Amendment claim fails, plaintiffs' Equal Protection claim will fail as well; if plaintiffs' First Amendment claim succeeds, the constitutional violation will be redressed without resorting to the Equal Protection Clause. *Hill,* 411 F.3d at 126; *Stockham Interests, LLC,* 2008 WL 4889023 at *8, 2008 U.S.Dist. LEXIS 93152 at *22; *The Nationalist Movement v. City of York,* 425 F.Supp.2d 574, 588– 589 (M.D.Pa.2006), *aff'd in part and rev'd in part,* 481 F.3d 178 (3d Cir.2007). Accordingly, I dismiss plaintiffs' federal Equal Protection claim as duplicative of plaintiffs' First Amendment claim. *Stockham Interests, LLC,* 2008 WL 4889023 at *8, 2008 U.S.Dist. LEXIS 93152 at *22.

■■■ As noted in this Opinion in the section on *Pennsylvania Constitutional Claims,* above, concerning Count II of the complaint, to the extent that plaintiffs' § 1983 claim is based on alleged violations of the Pennsylvania Constitution, it must be dismissed. This is equally true of equal protection claims. Although plaintiffs assert violations of the Equal Protection Clause of the Pennsylvania Constitution, relief under § 1983 is available only for deprivations of federal Constitutional or statutory rights, and thus that claim must be dismissed. *Laudadio, supra,* 2008 WL 1820942, at *2, 2002 U.S.Dist. LEXIS 33224, at *5.

### *Public Nuisance*

Finally, in Count IV of their complaint, plaintiffs bring a pendent state-law claim for public nuisance under Pennsylvania law. As a United States District Court judge exercising supplemental jurisdiction over this claim, I must apply the substantive law of Pennsylvania. *See Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

### Private Cause of Action

Pennsylvania recognizes a private cause of action for public nuisance. "The rule unquestionably is that a private action for a public nuisance can be maintained only by one suffering a particular loss or damage beyond that suffered by all others affected by the nuisance...." *Edmunds v. Duff,* 280 Pa. 355, 366, 124 A. 489, 492 (1924). Indeed, the Supreme Court of Pennsylvania has so held for at least 200 years. *See, e.g., Rohm and Haas Company v. Continental Casualty Company,* 566 Pa. 464, 475 n. 5, 781 A.2d 1172, 1178 n. 5 (2001); *Pennsylvania SPCA,* 428 Pa. at 360, 237 A.2d at 348; *Hughes v. Heiser,* 1 Binn. 463, 468 (Pa.1808).

It "has been settled law from the Year– Books downward, if a party has sustained any special damage from a public nuisance beyond that which affects the public at large, whether it be direct or consequential, an action will lie against the author of the nuisance, for redress." *The Pennsylvania and Ohio Canal Company v. Graham,* 63 Pa. 290, 296 (1869).

The Third Circuit, following Pennsylvania decisions and the Restatement of Torts, has repeatedly reached the same result: "In order to recover damages in a private action for public nuisance, a plaintiff must have suffered a harm of greater magnitude and of a different kind than

437

that which the general public suffered." *Allegheny General Hospital v. Philip Morris, Inc.,* 228 F.3d 429, 446 (3d Cir. 2000); *see PECO v. Hercules, Inc.,* 762 F.2d 303, 315–316 (3d Cir.1985); *John B. Kelly, Inc. v. Lehigh Nav. Coal Co., Inc.,* 151 F.2d 743, 748 (3d Cir.1945).

This result is consistent with the Restatement (Second) of Torts, which provides:

> Who Can Recover For Public Nuisance
>
> (1) In order to recover damages in an individual action for a public nuisance, one must have suffered harm of a kind different from that suffered by other members of the public exercising the right common to the general public that was the subject of interference.
>
> (2) In order to maintain a proceeding to enjoin to abate a public nuisance, one must
>
> (a) have the right to recover damages, as indicated in Subsection (1), or
>
> (b) have authority as a public official or public agency to represent the state or a political subdivision in the matter, or
>
> (c) have standing to sue as a representative of the general public, as a citizen in a citizen's action or as a member of a class in a class action.

Restatement (Second) of Torts § 821C.

Defendants rely on a Superior Court of Pennsylvania case for the proposition that "Pennsylvania has never recognized a private cause of action for public nuisance." *Duquesne Light Company v. Pennsylvania American Water Company,* 850 A.2d 701, 704 (Pa.Super.2004). The opinions of intermediate state courts such as the Superior Court of Pennsylvania are "not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court in the state would decide otherwise." *Nationwide Mutual Insurance Company v. Buffetta,* 230 F.3d 634, 637 (3d. Cir.2000)(quoting *West v. AT & T*

*Co.,* 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940)).

In light of 200 years of Pennsylvania and Third Circuit law that have consistently recognized a private cause of action for public nuisance, discussed above, I am convinced that the Supreme Court of Pennsylvania would continue to recognize a private right of action for public nuisance if the question were presented to that court. Defendants' broad statement that Pennsylvania has never recognized a private cause of action for public nuisance is simply incorrect.

Defendants also cite the decision of my colleague United States District Judge Gene E.K. Pratter in *Ricchiuti v. The Home Depot Inc.,* 412 F.Supp.2d 456, 459 (E.D.Pa.2005), which relied heavily on the Superior Court's *Duquesne Light Company* Opinion, for this proposition. I note that other Eastern District Opinions have recognized a private cause of action for public nuisance. *See, e.g., Degussa Construction Chemicals Operations, Inc. v. Berwind Corporation,* 280 F.Supp.2d 393, 410 (E.D.Pa.2003)(Baylson, J.); *City of Philadelphia v. Beretta U.S.A., Corp.,* 126 F.Supp.2d 882, 907 (E.D.Pa.2000)(Schiller, J.); *Greyhound Lines, Inc. v. Peter Pan Bus Lines, Inc.,* 845 F.Supp. 295, 301 (E.D.Pa.1994)(Brody, J.). I also note that the Opinions of other district courts are persuasive but not binding authority on this court.

If they are not incorrectly decided, the *Duquesne Light Company* and *Ricchiuti* opinions are best understood as being limited to barring private claims for public nuisance "involving purely economic loss." *Duquesne Light Company,* 850 A.2d at 705; *Ricchiuti,* 412 F.Supp.2d at 459 n. 2. In any event, plaintiffs here do not allege any economic loss, so I need not address whether or not Pennsylvania's private

cause of action for public nuisance extends to the recovery of purely economic losses.

### Violation of a Public Right

■ Defendants argue that plaintiffs have not identified a public right which defendants violated. Plaintiffs argue that defendants' obstruction of a public street constitutes a public nuisance. Viewing the facts in the light most favorable to plaintiffs, I find that plaintiffs have sufficiently alleged a public nuisance.

"A public nuisance is an unreasonable interference with a right common to the general public." *Machipongo Land and Coal Company, Inc. v. Commonwealth of Pennsylvania, Department of Environmental Protection,* 569 Pa. 3, 40, 799 A.2d 751, 773 (2002) (quoting Restatement (Second) of Torts § 821B). Plaintiffs allege that defendants "have blocked pedestrian and motor vehicle traffic on Keats Street." [62] "[O]bstruction of a public highway is a public nuisance." *Presbyterian Hospital in Philadelphia v. Philadelphia,* 329 Pa. 337, 340, 198 A. 53, 54 (1938). *See, e.g., A. Wishart & Sons Co. v. Erie Railroad Co.,* 283 Pa. 100, 102, 128 A. 730, 731 (1925); *Hughes,* 1 Binn. at 468. Thus, plaintiffs have sufficiently alleged the existence of a public nuisance.

### Specific Injury

Finally, to state a claim for public nuisance, plaintiffs must allege that "either in their property or civil rights, [they] are specifically injured by the public nuisance over and above the injury suffered by the public generally." *Pennsylvania SPCA,* 428 Pa. at 360, 237 A.2d at 348.

"The rule unquestionably is that a private action for a public nuisance can be maintained only by one suffering a particular loss or damage beyond that suffered by all others affected by the nuisance...."

*Edmunds,* 280 Pa. at 366, 124 A. at 492. Plaintiffs allege that their First Amendment rights are violated by defendants' obstruction of Keats Street. [63]

■ Civil rights violations can be specific injuries sufficient to state claims for public nuisance. *Pennsylvania SPCA,* 428 Pa. at 360, 237 A.2d at 348.

■ As discussed above, plaintiffs allege that defendants held tarps "seven feet apart and across Keats Street" and formed a human shield around the pregnant women crossing Keats Street, which actions "turn the cross-walk into an enclosed, effectively private corridor." [64] Viewing the facts in the light most favorable to plaintiffs, it can reasonably be inferred that defendants' tarps and human shield prevent pregnant women at the Allentown Women's Center from being able to see plaintiffs' actions and literature.

As I found above, plaintiffs have sufficiently pled that defendants' actions constitute an impermissible content-based restriction on speech. This alleged civil rights violation is a sufficient specific injury to support plaintiffs' claim for public nuisance. Plaintiffs' public nuisance claim survives defendants' motion to dismiss.

### *CONCLUSION*

For all the foregoing reasons, plaintiffs' claims under § 1983 for violation of freedom of speech and religion under the First Amendment (Count I), and plaintiffs' private claim for public nuisance under Pennsylvania law (Count IV) each have been pled sufficiently and both therefore survive defendants' motion to dismiss.

Plaintiffs' claims under § 1983 for violation of free speech and religion rights un-

---

**62.** Complaint at paragraph 24.

**63.** Plaintiffs' Brief at 25.

**64.** Complaint at paragraph 24; Plaintiffs' Brief at 25.

der the Pennsylvania Constitution (Count II) are dismissed for failure to state a claim upon which relief can be granted.

Plaintiffs' Count III claim under § 1983 for violation of their right to equal protection of the law under the Fourteenth Amendment to the United States Constitution is dismissed as duplicative of plaintiffs' First Amendment claims. Plaintiffs' Count III claim under § 1983 for violation of their right to equal protection of the law under Article I, §§ 3 and 7 of the Pennsylvania Constitution is dismissed for failure to state a claim upon which relief can be granted.

### ORDER

NOW, this 31st day of March, 2009, upon consideration of the following documents:

(1) Motion to Dismiss of Defendants Allentown Women's Center and Jennifer Boulanger filed July 24, 2008;

(2) Memorandum of Law in Support of Motion of Defendants Allentown Women's Center and Jennifer Boulanger to Dismiss the Complaint, which memorandum was filed July 24, 2008;

(3) Plaintiffs' Brief in Opposition to *Fed. R.Civ.P.* 12(b)(6) Motion to Dismiss by Defendants Allentown Women's Center and Jennifer Boulanger, which brief was filed August 28, 2008; and

(4) Complaint for Injunctive Relief and Damages filed by plaintiffs June 4, 2008;

and for the reasons articulated in the accompanying Opinion,

*IT IS ORDERED* that the Motion to Dismiss of Defendants Allentown Women's Center and Jennifer Boulanger is granted in part and denied in part.

*IT IS FURTHER ORDERED* that Count II and Count III of plaintiffs' Complaint for Injunctive Relief and Damages are dismissed in their entirety.[1]

*IT IS FURTHER ORDERED* that in all other respects the Motion to Dismiss of Defendants Allentown Women's Center and Jennifer Boulanger is denied.

*IT IS FURTHER ORDERED* that defendants Allentown Women's Center, Inc. and Jennifer Boulanger shall have until April 24, 2009 to answer plaintiff's Complaint.

---

**1.** Defendants City of Allentown and Allentown Chief of Police Roger MacLean did not file motions to dismiss or responses to the motion to dismiss of co-defendants Allentown Women's Center, Inc. and Jennifer Boulanger. However, district courts may dismiss claims that do not state causes of action sua sponte. *Bintliff–Ritchie v. American Reinsurance Company,* 285 Fed.Appx. 940, 943 (3d Cir.2008); *Bryson v. Brand Insulations, Inc.,* 621 F.2d 556, 559 (3d Cir.1980). For the reasons articulated in the accompanying Opinion, Counts II and III of plaintiffs' Complaint fail to state claims upon which relief can be granted against any defendant. Accordingly, I dismiss Counts II and III in their entirety.